ROCK SPRING DISTILLING COMPANY ET AL. *v.* W. A. GAINES & COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 58. Argued January 31, February 1, 1918.—Decided March 18, 1918.

Under the common law and the federal registration statute (February 20, 1905, c. 592, 33 Stat. 724) a trademark for one variety of goods includes other varieties of the same species.

An adjudication that, as against B, A is entitled, by prior appropria-

tion, to use a trademark on "blended" whiskey, protects A, as against B, in its use on "straight" whiskey.

G, claiming a trademark by prior adoption and use and by registration under the Act of February 20, 1905, *supra,* in connection with the manufacture in Kentucky and extensive sale of "straight" whiskies, sued R to enjoin the use of the mark on "straight" whiskey manufactured in that State.  R, claiming to be acting as the agent of H, set up in bar a decree of the Circuit Court in Missouri, directed by the Circuit Court of Appeals, dismissing the bill in a former suit, brought by G against the predecessors of H to enjoin them from using the same mark on "blended" whiskey, which they had been producing and selling under it, in a limited way, at St. Louis.  *Held,* reviewing the pleadings in the former case and the findings and conclusions of the Circuit Court of Appeals as displayed in its opinion, (1) that the issues as to the common-law right were the same in both cases; (2) that the former decree established against G, in favor of the predecessors of H, a title by prior appropriation, and not merely a defensive right limited to the type of whiskey ("blended") they were selling and to the volume and territorial extent of their trade in it when the former bill was filed; (3) that this adjudication enured to R by privity and (4) barred the subsequent suit, notwithstanding the latter related to whiskey of another type—"straight" whiskey,—and notwithstanding the subsequent registration of the trademark by the plaintiff for "straight" whiskey under the federal act.

226 Fed. Rep. 531, reversed.

THIS is a bill in equity brought by the Gaines Company against the Rock Spring Company to restrain the latter from using the trademark of the former.  The trademark is registered and is employed by the Gaines Company to designate a brand of straight rye or straight bourbon whiskey manufactured by that company.

The following are the facts of the bill, stated narratively: The Gaines Company is the owner of a whiskey distillery in Woodford County, Kentucky, known and named as the Old Crow Distillery.  It is the only one in the State that is or ever has been designated by the name of "Crow" or "Old Crow."

Its product has been at all of the times mentioned in

the bill straight rye and straight bourbon whiskey and to it there has at all times been applied the trademark consisting of the words "Old Crow" by being imprinted or branded on the wooden box containing the whiskey and imprinted upon labels affixed to bottles containing the whiskey. The trademark is now and for many years past has been used by the company and its predecessors in commerce among the States.

On February 26, 1909, it filed in the Patent Office, in pursuance of the Act of February 20, 1905, 33 Stat. 724, in due form and under the conditions required, an application for registration of the trademark and a certificate of registration for the same was duly issued and for many years past has been used by the company as a trademark for its straight rye and straight bourbon whiskey.

The Gaines Company, availing itself of certain acts of Congress, began and has ever since maintained the bottling of the "Old Crow" in bond and it was then and has ever since remained the only "Old Crow" whiskey bottled in bond and has an extensive sale throughout the United States and in foreign countries; and when so bottled in bond it is known as and called "Old Crow Bottled in Bond," is so marked, and commands a high price.

The Rock Spring Company is a corporation, has a distillery in the county of Daviess, Kentucky, and is the owner of a distillery situated therein known as Distillery No. 18, operated by Silas Rosenfield, one of the defendants.

The Rock Spring Company, in fraud of the Gaines Company's rights and in infringement of its trademark, made or caused to be made and sold or caused to be sold in Kentucky a certain spurious straight bourbon whiskey, not the product of the Gaines Company, and branded the same with the words "Celebrated Old Crow

Whiskey Bottled in Bond," have caused the same to be bottled in bond, have applied to the labels thereon the words "Old Crow" in script type, and have caused the same to be sold and transported in interstate commerce, and this with the intent to mislead and deceive the public, and are doing so and will continue to do so unless restrained.

An injunction is prayed and an accounting.

Demurrers were filed by the Rock Spring Company and Rosenfield, which were overruled, and they then answered, pleading a prior adjudication based upon the following alleged facts: A suit was brought in the United States Circuit Court for the eastern division of the Eastern District of Missouri by W. A. Gaines & Company against Abraham M. Hellman and Moritz Hellman charging infringement of the trademark and unfair competition. The bill was subsequently amended making Max Kahn, administrator, with will annexed, of the estate of Abraham M. Hellman, deceased, a party to the suit. Upon the issues framed a decree was entered in favor of the complainants, an injunction granted and an accounting ordered.

The decree was reversed by the United States Circuit Court of Appeals for the Eighth Circuit with directions to dismiss the bill on the ground that the evidence clearly showed that the predecessors in business of the appellants therein had adopted the words "Old Crow" as a trademark for whiskey as early as the year 1863, and the evidence failed to show that the predecessors of the Gaines Company had used the words as a trademark prior to the year 1870.

A petition for certiorari to review the decision was denied by the Supreme Court of the United States.

Other proceedings were had in the suit pending its appeal and afterward. The suit, however, was finally dismissed on the merits because of the decision of the

Court of Appeals and the action of the Supreme Court of the United States.

Defendants are in privity with the parties recovering under those decisions and decrees and are manufacturing whiskey under contracts of agency from them or their successors and neither have nor claim any right except through such contract.

The Hellman Distilling Company filed a petition to be permitted to intervene, which was denied. 179 Fed. Rep. 544.

After hearing, a decree was entered sustaining the plea of former adjudication based on the decree of the Circuit Court for the Eastern District of Missouri, and accordingly and for that reason the bill of complaint, so far as it sought relief for any infringement of the trademark "Old Crow" in connection with its use on whiskey, was dismissed. And it was further decreed that the registration of the trademark July 20, 1909, could not and did not invalidate or nullify the estoppel. 202 Fed. Rep. 989.

The decree was reversed by the Circuit Court of Appeals (226 Fed. Rep. 531,) and thereupon this certiorari was applied for and allowed.

*Mr. Luther Ely Smith*, with whom *Mr. W. T. Ellis* was on the briefs, for petitioners.

*Mr. Edmund F. Trabue* and *Mr. James L. Hopkins*, with whom *Mr. Daniel W. Lindsey* was on the brief, for respondent.

MR. JUSTICE McKENNA, after stating the case as above, delivered the opinion of the court.

The decree of the Circuit Court for the Eastern District of Missouri, directed by the decision of the United States Circuit Court of Appeals for the Eighth Circuit,

is pleaded in bar, and whether it is such depends upon the issues that were made or passed upon in those courts.

The bill of complaint in the case alleged that in 1835 one James Crow (he is the James Crow of this suit) invented and formulated a novel process for the production of whiskey which he did not patent or seek to patent but kept for his own use until his death in 1855.

During all of the time after 1835 the whiskey so produced was known and styled as "Old Crow" whiskey and the designation was adopted and used as a trademark.

After the death of Crow one William F. Mitchell, to whom Crow had communicated his secret process, continued the distillation so designated, and in 1867 a partnership, styled Gaines, Berry & Co., obtained possession of the distillery wherein the whiskey distilled by the indicated process continued to be produced by the same process until the partnership was succeeded by W. A. Gaines & Co., and the latter company succeeded also to all of the partnership assets of the other and continued to produce the whiskey until the incorporation of the complainant, when all these assets were acquired by it.

When the name "Old Crow" was applied by Crow, it was a valid trademark, and since its adoption it has always been applied to the whiskey produced by the indicated secret process, and since that time has indicated to the public whiskey distilled on Glenn's Creek, in Woodford County, Kentucky, and nowhere else.

Complainant caused the same to be registered in the Patent Office under the provisions of the act of Congress so providing. The value of the trademark is $500,000 and an integral part of the good will of complainant's business, and the whiskey is of greater value than any other of equal age.

Since January, 1903, the defendants, in violation of complainant's rights and good will, have made or caused to

to be made and sold in the City of St. Louis a certain spirituous or alcoholic fluid not made under complainant's process and have labeled it with the words "Old Crow" without license from the complainant and against its consent. Such unlawful use will greatly lessen the value of complainant's business and good will, and complainant is without adequate remedy at law.

There was the usual prayer for an accounting and an injunction.

There was a supplemental bill to the same effect, but charging that A. M. Hellman & Co. had become the successors of the original defendants and had continued the acts alleged in the original bill.

To the bill the defendants answered, with denials, and alleged the use of the words "Crow," "Old Crow" and "J. W. Crow" in connection with their own business upon packages of whiskey and in their and their predecessor's business from 1863 and prior thereto; that the whiskey sold by complainant was an unrefined, harmful and deleterious article and that the whiskey sold by them was a brand largely free from impurities.

The defendants also filed a cross bill which, however, was not insisted upon.

These, then, were the issues, and upon them and the evidence adduced to sustain them the Circuit Court entered a decree establishing complainant's right to the word "Old Crow" as a trademark, enjoined the use thereof by defendants and found them guilty of unfair competition in business and ordered an accounting. The Circuit Court of Appeals reversed the decree.

The latter court made a careful review of the evidence, denominating it a mass of the relevant and irrelevant, and felt that it was not necessary to consider the comparative excellence of the whiskeys, and remarked that the evidence did "not show that Glenn's Creek in any way entered into the composition of the whiskey" and that

"there was no secret about the process employed by Crow nor did it differ materially from that employed by every other distiller of the same period." To the objection that the "designative words" were rarely used by the Hellmans and that their product was of inferior quality, the court replied that the right to use could not be measured by the extent to which the Hellmans employed it, "whether more or less frequently," nor "by the overshadowing comparative amount of the complainant's [Gaines & Company's] sales under the designation of 'Old Crow' whiskey, nor by the asserted superiority of its product."

The court concluded as follows: "(1) That inasmuch as the defendants' predecessors in business, prior to the use or the adoption of the designative word 'Crow,' or the words 'Old Crow,' as a trademark, employed those words in descriptive terms in connection with their business as dealers in whiskey in St. Louis, Mo., and said predecessors and the defendants so continued to use the same, to a limited extent, up to the time of the institution of this suit, in good faith, they are not guilty of infringing the complainant's claimed trademark; and (2) that the defendants are not guilty of having engaged in unfair competition with the complainant in the prosecution of their business."

It will be observed that the issues in that case were the same as those in the present case as to the right to the use of the word "Crow" with any of its qualifications. But in this case there is another ground of recovery alleged, that is, the application for and the receipt of the certificate of registration for the word as a trademark for straight rye and straight bourbon whiskey. The District Court, however, adjudged that the decree of the Circuit Court in Missouri directed by the Circuit Court of Appeals constituted a bar to this suit. To the judgment of the Circuit Court of Appeals of the

Sixth Circuit, reversing the action of the District Court, this certiorari is directed.

The Circuit Court of Appeals, however, did not yield to all of the views of the Gaines Company. It refused to decide, as urged to do, that the defendants in this suit were not in privity with the defendants in the other, and it rejected the contention that the use of the trademark established in the Hellman Company for a blended whiskey was not an adjudication of the right to use it upon a straight whiskey. In the rulings on both contentions we concur. The first needs no comment; we adopt that of the court on the second. The court said that "whatever the extended classifications and subclassifications of the Patent Office practice may contemplate, neither the common law nor the registration statute can intend such confusion as must result from recognizing the same trademark as belonging to different people for different kinds of the same article. Established trademarks directly indicate origin; but, if they have any value, it is because they indirectly indicate kind and quality, and to say that the seller of a blended whiskey might properly put upon it a mark which was known to stand for a straight whiskey, or vice versa, would be to say that he might deceive the public, not only as to the origin, but also as to the nature and quality, of the article."

The philosophy of this might be questioned. But it seems to have become established, and, however it may be disputed in reason, there is an opposing consideration. As said by Circuit Judge Sanborn in *Layton Pure Food Co.* v. *Church & Dwight Co.* (C. C. A.), 182 Fed. Rep. 35, 39, "Uniformity and certainty in rules of property are often more important and desirable than technical correctness."

And this reasoning prevailed with the Circuit Court of Appeals which, after citing cases, said that it was forced to think "that whatever was adjudicated regarding

plaintiff's title to its trademark applies to its use of both kinds of whiskey." And, of course, conversely we may say that, whatever was decided against its title to its trademark applies to its use on both kinds of whiskey. In other words, if defendants were adjudged to have title to the words "Crow" or "Old Crow" on blended whiskey, they have a right to use it on straight whiskey without infringing any right of complainant. We come back, therefore, to the question as to what was adjudged in the prior suit.

To this question the Court of Appeals of the Sixth Circuit gave great care and in an opinion of strength decided the negative of it. The court, in concession to the argument, assigned a prior use to the Hellmans, but expressed the view that the existence of such "general or *prima facie* exclusive right is not inconsistent with an inability to enforce it against some persons and under some circumstances." And it was added: "Instances may arise where the affirmative conduct or the laches of the first appropriator, and with reference to what he was at first entitled to call an infringement, has been such that on the principles of estoppel or the rule of laches a court of equity cannot tolerate that he should enforce against the later user the right which might have been originally perfect. . . . Under these considerations and upon reference to the pleadings and the proofs in the Hellman case, we conclude that the latter case is of the class where the refusal to give an injunction to the first appropriator of the mark may be justified upon the ground of his laches or estoppel; and so this ground of support must be considered in determining what is the true basis of that decree."

The court hence concluded that the decree did not adjudge title to the Hellmans but adjudged them a "defensive right and nothing more," and, explaining the right, the court said that it "does not extend to any whiskey

not mixed or blended so as to be of the same general type
as that which defendants [Hellmans] had been making,
or to trade or territory which they were not selling when
that bill was filed."

We are not able to assent. The court admitted that
the language in the body of the opinion of the Circuit
Court of Appeals for the Eighth Circuit is consistent with
the interpretation petitioners put upon it, that is, "that
the trademark, in its general, *prima facie*, affirmative
aspect, belonged to the Hellmans by prior appropriation,"
but the court added that the last paragraph of the opinion
indicated "that the two judges (only two sitting) did not
unite in putting the decision on this ground." We think
this was an oversight. The opinion was that of the court,
though delivered by one judge, and the conclusion was
the conclusion of the court and necessarily had to be,
else there would have been no decision or decree. And
it was thoroughgoing. It is manifest from the excerpts
we have made from the opinion that the judgment of
the court was not limited as to time or territory; nor did
the pleadings so limit it. The complainant in that case
(respondent here) alleged that it was the sole and exclu-
sive owner of the trademark and had used it from 1835
to the present time, being virtually the successor of the
first producer of the product.

Defendants (petitioners) contested the claim and as-
serted a right in themselves based on prior adoption
and continuous use, and that right was adjudged to
them.

*Decree of the Circuit Court of Appeals reversed and that
of the District Court affirmed.*