M. C. PETERS MILLING CO. v. INTERNATIONAL SUGAR FEED NO. 2 CO.

(Circuit Court of Appeals, Sixth Circuit. December 12, 1919.)

No. 3304.

1. TRADE-MARKS AND TRADE-NAMES ☞61—MANUFACTURER HAS RIGHT TO USE ON DIFFERENT KINDS OF SAME ARTICLE.

A manufacturer of stock food, rightfully using a trade-mark or symbol on what is known as "dry feed," cannot be so limited as to preclude it from using the same mark on "sweet feed" manufactured by it.

2. TRADE-MARKS AND TRADE-NAMES ☞58—NO INFRINGEMENT.

A trade-mark, consisting of a picture of a man on horseback, with the horse in moving position, held not infringed by a picture of a horse alone, standing still.

3. EVIDENCE ☞574—OPINION AS TO SIMILARITY OF TRADE-MARKS INFERIOR TO OBSERVATION.

In determining whether two marks or designs are so similar as to be likely to cause confusion and result in unfair competition, the judgment of the eye on comparison of the two is more satisfactory evidence than the opinions of witnesses.

4. TRADE-MARKS AND TRADE-NAMES ☞70(2)—PICTURED DESIGNS SO DISSIMILAR AS NOT TO SHOW UNFAIR COMPETITION.

Pictured designs, used by complainant and defendant, respectively, as trade-marks for horse feed, consisting in one case of a horse and rider, and in the other of a horse, taken in connection with their dress and surrounding reading matter, held so dissimilar in appearance as to preclude possibility of one being mistaken for the other, and to disprove any intent of unfair competition, in the absence of evidence of actual confusion in the trade.

5. TRADE-MARKS AND TRADE-NAMES ☞68—"UNFAIR COMPETITION" DEFINED.

"Unfair competition" consists in the use of methods, brands, or advertising matter intended to cause, or in fact causing, confusion in the trade, or to induce or mislead the trade into the belief that the goods of the person or firm marketed under such similar device are the goods of the person or firm which has established a trade and acquired a good will in business in connection with the rightful use of such trade token.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

6. TRADE-MARKS AND TRADE-NAMES ☞93(3)—CIRCUMSTANTIAL EVIDENCE MAY SHOW INTENT TO DECEIVE.

It is not necessary to establish by direct evidence the intent to deceive, where the circumstances are such as to lead to no other rational conclusion.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Suit in equity by the M. C. Peters Milling Company against the International Sugar Feed No. 2 Company. Decree for defendant, and complainant appeals. Affirmed.

T. Walter Fowler, of Washington, D. C., for appellant.

A. C. Paul, of Minneapolis, Minn., and Julian C. Wilson, of Memphis, Tenn., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. On the 9th of March, 1916, the M. C. Peters Milling Company, a corporation organized under the laws of the state of Nebraska, commenced an action in the United States District Court in and for the Western District of Tennessee, against the International Sugar Feed No. 2 Company, a corporation organized under the laws of the state of Minnesota, to enjoin its alleged infringement of a registered trade-mark, and also for unfair competition.

The defendant, by its answer, denies that it has infringed plaintiff's trade-mark, or that it has in any way, manner, or form entered into or conducted any unfair competition. Upon the issues joined, the District Court found for the defendant, and dismissed the bill of complaint, with costs.

It appears from the evidence that the characteristic feature of plaintiff's trade-mark consists of two concentric circles. Within the innermost circle is the picture of a horse and rider. The trade-mark of the defendant also consists of two concentric circles, within which is another circle with saw-tooth outline. This third circle was inserted within the inner and outer circles about 1912 or 1913. It appears from the evidence, however, that this was omitted from some of the bags through mistake of the bag company furnishing the same; but as soon as this mistake was discovered it was corrected, and no bags have been used since that time without the saw-tooth circle. These concentric circles are within a rectangular field surrounded by heavy lines, also in saw-tooth form. Outside this border, around the rectangular field, and a part of it, are straight lines touching the saw-tooth points. Within the inner circle is the picture of a horse.

[1] It further appears from the evidence that, prior to registration of plaintiff's trade-mark practically all of its distinguishing features, except the rider, were in general use, in some form or other by the manufacturers of horse feed. It also further appears that it is and was a custom in general use by all manufacturers of stock feed to print or stamp on the bags containing the same a picture of the head or whole of the animal for which the feed is specifically intended. While this is conceded by the appellant, the claim is made in its behalf that the brands and trade-marks of this character were applied only to what is known to the trade as "dry feed," and that it was the first manufacturer to use such mark or brand in connection with the manufacture and sale of a mixture of grain, alfalfa, and molasses, known to the trade as "sweet feed"; that "dry" and "sweet feeds" are entire-

ly different products; and that for this reason it is entitled to the exclusive use of the concentric circles, and the picture of a horse within the inner one, in connection with the manufacture and sale of "sweet feeds."

This question is discussed and decided in the case of W. A. Gaines & Company v. Rock Springs Distilling Company, 226 Fed. 531, 537, 141 C. C. A. 287, 293. That case involved the distinction between straight whisky and blended whisky, and in that connection Judge Denison, speaking for the court, said:

"Whatever the extended classifications and subclassifications of the Patent Office practice may contemplate, neither the common law nor the registration statute can intend such confusion as must result from recognizing the same trade-mark as belonging to different people for different kinds of the same article."

The Supreme Court of the United States, in reviewing this case (246 U. S. 312, 320, 38 Sup. Ct. 327, 329 [62 L. Ed. 738]), quotes this language with approval.

It necessarily follows that, where it has been the common custom of the manufacturers of horse feed to print or stamp the picture of a horse on the bags containing the same, the appellant would not acquire any prior right to the use of such picture by reason of the fact that it was first to use the same on the feed containing an additional ingredient, for, after all, it is still horse feed, although differing in this respect as to its component parts.

[2] .In determining whether the brand used by the defendant is an infringement of plaintiff's trade-mark, this court is not disposed to consider or apply any nice, technical distinctions, such as an artist's eye would readily perceive, but rather only such marked differences as would be readily apparent to the ordinary purchaser of horse feeds. The doctrine is fairly stated by Mr. Nims, in his work on Unfair Competition and Trade-Marks (2d Ed.) p. 583, in this language:

"Such a similarity as will deceive is that likeness which renders the average buyer unable to distinguish the defendant's name or mark from the memory of plaintiff's name which he carries in his mind, not such as will enable him to know them apart when the two are put side by side before him."

Applying this principle to the facts in this case, it is apparent that the defendant's trade-mark is so unlike the trade-mark of the plaintiff that the average buyer may easily distinguish between the two. The picture of the horse in the defendant's trade-mark is wholly unlike the picture of the horse in the plaintiff's design. They are as unlike as it is possible to draw two pictures of the same animal. One is the picture of a horse in action, with his right fore foot and left hind foot lifted from the ground; its tail falls against the hips, and the lower part of its head is drawn in against its throat. The other is the picture of a horse standing firmly on its four feet, with its tail raised far from its hips, and its head some distance from the lower part of the neck. Aside from these distinguishing features of the different types of horse shown in these designs, when the plaintiff's trade-mark is taken in connection with the rider, all similarity ends. This feature of the de-

sign was emphasized by the plaintiff in attempting to secure registration of its trade-mark.

After registration was refused by the Patent Office, because of its similarity to the trade-mark of Merriam & Rolph, consisting of the word "ARABIAN," the plaintiff then filed in the Patent Office an argument calling attention to the "picture of the man on horseback," contained in its design, as the distinguishing feature thereof from the word "Arabian," and, in that connection, used this language:

"The representation of the male figure on horseback, however, is arbitrary and fanciful, and hence cannot possibly be confused with a mere word printed in plain and black letters or otherwise."

This court is clearly of the opinion that this argument was entirely justified by the facts. Undoubtedly it met with the favor of the officials of the Patent Office, for, notwithstanding the former rejection, a certificate of registration was then issued to the plaintiff. For these reasons, this court has reached the conclusion that the design of the defendant is in no way intended to be, nor is it in fact, an infringement of plaintiff's trade-mark.

The question of unfair competition is so closely allied with the question of the infringement of a trade-mark that, in view of the conclusion reached, it would seem unnecessary to discuss the former at any length. As a general rule, the right to recover upon either of these causes of action depends, substantially, upon the same state of facts, excepting, of course, the statutory provisions applying to trademarks, and excepting, also, that in disposing of the question of unfair competition, a court should take into consideration the dress, combination of colors, and manner and method of application and use of the respective marks in connection with the designs actually appropriated and protected by registration, if registration has, in fact, been secured.

In the case of Merriam Company v. Saalfield, 198 Fed. 369, 117 C. C. A. 245, Judge Denison, referring to the analogy between these two remedies, said:

"The entire substantive law of trade-marks (excepting statutory provisions and construction) is a branch of the broader law of unfair competition. The ultimate offense always is that defendant has passed off his goods as and for those of the complainant."

There is no evidence in this record that the design used by the defendant has in fact misled or deceived any purchaser, but there is some testimony that there is such a similarity between the designs of defendant and plaintiff as would tend to cause confusion in the trade and induce the ordinary customer to believe that the goods of the defendant were the goods of plaintiff's origin and manufacture.

[3] The opinion of the witnesses in that regard, however, must yield to the more positive evidence afforded by the exhibits in this case. Mr. Justice Field has very clearly expressed this idea in the case of Liggett Tobacco Co. v. Finzer, 128 U. S. 182, 9 Sup. Ct. 60, 32 L. Ed. 395, in this language:

"The judgment of the eye upon the two is more satisfactory than evidence from any other source as to the possibility of parties being misled, so as to

take one tobacco for the other; and this judgment is against any such possibility."

[4] Even a casual inspection of these trade-marks shows such material differences as would preclude the possibility of one being mistaken for the other.

The trade-mark of plaintiff is used by it in marketing the product known as "Peters' Arab Horse Feed." That name is stamped on the field within the concentric circles around the horse and rider. The picture of the rider is undoubtedly intended to represent an Arab soldier in full uniform, with red cap, red trousers, and green cloak. The bridle and a shawl or blanket, hanging from the saddle, are in red; a broad girth, extending around the breast of the horse, is in red and green. The colors used are red and green.

Upon the design of the defendant there is printed upon the space between the outer circle and the one of saw-tooth formation, the word "Ringleader," and around the top and outside of the larger circle is printed in semicircular form the word "International." Below these concentric circles there is printed, in large letters, "International Sugar Feed Number Two Co." Within the inner circle is the picture of a riderless circus ring horse, with bridle, reins, and surcingle. The reins are attached to the surcingle midway on the horse's sides. The color scheme is red and green. While it is true, as contended by counsel for appellant, that each trade-mark contains the picture of a stylish horse, yet they are of such different and distinctive types that one could not possibly be mistaken for the other.

The distinguishing features of the plaintiff's trade-mark are not only peculiarly appropriate to the trade-name of the product marketed by it, but are also so "arbitrary and fanciful" in character as to fully and completely differentiate it from the mark used by defendant.

[5, 6] Unfair competition consists in the use of methods, brands or advertising matter intended to cause, or in fact causing confusion in the trade, or to induce or mislead the trade into the belief that the goods of the person or firm marketed under such similar device are the goods of the person or firm who has established a trade and acquired a good will in business in connection with the rightful use of such trade token. While it is not necessary to establish by direct evidence the intent to deceive, where the circumstances are such as to lead to no other rational conclusion, yet in this case the distinguishing features of the trade-marks of the plaintiff and defendant, taken in connection with their dress and color scheme, as actually used by each, are so patent and obvious that the presumption as to the intent is to the contrary, and, in the absence of direct evidence showing that the defendant's trade-mark has in fact created confusion and misled and deceived customers, this presumption must obtain.

The judgment of the District Court is affirmed.