## ESTATE STOVE CO. v. GRAY & DUDLEY CO.

No. 5236.

Circuit Court of Appeals, Sixth Circuit.

June 13, 1930.

F. M. Bass, of Nashville, Tenn. (Greer Marechal, of Dayton, Ohio, Fyke Farmer and Bass, Berry & Sims, all of Nashville, Tenn., and Drury W. Cooper, of New York City, on the brief), for appellant.

K. T. McConnico and C. P. Hatcher, both of Nashville, Tenn. (Pitts, McConnico & Hatcher, of Nashville, Tenn., on the brief), for appellee.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge.

The plaintiff below, appellant here, is a long-established manufacturer of stoves. Prior to 1921, it and many other manufacturers had made heaters consisting of what was essentially a stove surrounded with a casing and providing an intervening air jacket. Air was taken in near the floor, passed upward as it was heated, and discharged through gratings at the top, thus providing a circulatory heating system for a room. Also prior to 1921, the phonograph or victrola cabinet had come to be a common article of room furnishing, and different styles and makes had a fairly typical and common appearance. At this time, plaintiff had what turned out to be a happy thought—making its circulating heater in the similitude of one of these cabinets, using therefor the size, form, and imitation of wood finish appropriate to accomplish the resemblance. Plaintiff named this article "Heatrola," and this name, in connection with the plaintiff's name, was prominently displayed on the front. Following this adoption, plaintiff advertised its Heatrola very extensively and, as the District Judge said, in every conceivable manner. Undoubtedly, before 1925 its appearance and indentifying name had become familiar to a substantial part of the stove-purchasing public the country over. In the last named year the defendant, also a stove manufacturer, put upon the market a similar article. Its general resemblance to the conventional music cabinet was very obvious, and for the same reason it strongly resembled plaintiff's Heatrola.

In 1926 this suit was brought alleging unfair competition. The District Court dismissed the bill. It is clear enough, we think, that any manufacturer of articles for household use is primarily free to cast his product in the form, as near as may be, of some other household article. Such an imitation or adaptation may be very appealing and lead to a large demand; but where no mechanical invention is involved the law provides no means for giving monopoly to the one who first gets the idea, except as such means may be found in a design patent. The case is substantially parallel with that of one who takes a descriptive word and uses it as the name of his commercially new article. The familiar form of an article of furniture, like the descriptive word, is open to appropriation and use or imitation by any one; the first user can acquire quasi exclusive rights only by use long enough and exclusive enough to give the word a secondary meaning, so that to that part of the public especially affected the word, or the form, indicates the origin of the article.

■ Whether the record in this case justifies the conclusion that in 1925 a room heater in the form of a music cabinet had come to be publicly thought of, ipso facto, as the Heatrola of plaintiff, is much controverted, and the right conclusion is certainly not easy to be drawn. For the purposes of this opinion, we assume that the claimed secondary meaning was then fairly established. The result would be that defendant could not put out its stove in this music-cabinet form without so differentiating its product as to neutralize the otherwise natural public confusion. This the defendant says it undertook to do. Its article name, "Washington Home Furnace," and its own name it displayed prominently enough, not on the outside front of the cabinet as plaintiff did, but upon the doors which immediately inclosed the firepot and which were seen as soon as the outside casing doors were opened. If this marking had been upon the outside, it would hardly be denied that the differentiation was sufficient; but whether such a nonexterior marking is likewise enough when in some less obvious position must depend, we think, upon the nature of the article and the reasonable certainty that the mark will be seen and appreciated by the ordinary purchaser. Misleading of the dealers is, of course, not involved; they would surely understand that they were buying from plaintiff's competitor. We think the nature of this article and its natural handling in the stores are such that the ordinary purchaser would understand that he was not buying a Heatrola. Considering the class of purchasers who would be the normal customers for such an article, it would not often be purchased merely from an advertisement or from a hasty glance at one on display, but it would naturally be somewhat carefully examined by the purchaser. He would be curious about its operation. He would examine to see how the fuel was put in, where it was burned, how the ashes were taken out, etc.; and a sale made without opening the outside casing and being confronted by defendant's name as the maker and by defendant's adopted trade name of the article, would be so far unusual as to negative any inference of probable misleading. Doubtless there are many articles as to which the maker, adopting an external

resemblance to another's product, ought to give "the antidote with the bane," and display his own marks prominently on the outside, because sales would be made upon a first impression of identity; but we cannot so classify this heater; sales would not be so made.

The principles to be applied are, sufficiently discussed in our opinions in Globe-Wernicke Co. v. Macey (C. C. A.) 119 F. 696, 703; Merriam v. Saalfield (C. C. A.) 238 F. 1; Upjohn v. Merrell Co. (C. C. A.) 269 F. 209; and Moline Co. v. Dayton Co. (C. C. A.) 30 F.(2d) 16. See also Cheney v. Doris (C. C. A. 2) 35 F.(2d) 279.

In one respect defendant transgressed the limits of fair competition. Plaintiff advertised in national periodicals with a colored print of its article, accompanied by the phrase (called the slogan), "No, this is not a phonograph." Defendant advertised with a very similar print of its article, accompanied by the "slogan," "No, this is not a Victrola." It would be the inevitable, and therefore it must be thought the intended, result that this close imitation of plaintiff's picture and slogan would be confusing. Those who had been familiar with plaintiff's characteristic advertising and inclined to buy from plaintiff, and then had this desire promoted by plaintiff's advertising, might open up a correspondence with defendant without noticing that defendant was not plaintiff. This advertising was clearly wrongful and subject to injunction. It is true that this was not long continued, but plaintiff was not obliged to rely upon defendant's discontinuance. It was entitled to injunction. Walker on Patents (6th Ed.) § 741.

However, we think it clear that it would be impossible to trace to this single element of forbidden unfair competition any distinct damage; the substantial thing to which plaintiff's loss of trade was due was the general resemblance, and we have held that this was not, under the circumstances, forbidden; for the damage caused for this too closely imitated advertising, plaintiff is not entitled to an accounting. Ludington v. Leonard (C. C. A. 2) 127 F. 155, 157; I. T. S. Co. v. Tee Pee Co. (C. C. A. 6) 288 F. 794, 798; W. A. Gaines v. Rock Spring Co. (C. C. A.) 226 F. 531, reversed (246 U. S. 312, 38 S. Ct. 327; 62 L. Ed. 738), but not on this point.

The decree below should be modified so as to award an injunction to the extent indicated by this opinion, and not otherwise; appellant should recover the costs of this court; and the relief to be granted in the court below, being only partial and perhaps relatively unimportant, the costs of that court will be awarded, or divided, according to the discretion of that court.