**CAVU CLOTHES, Inc., et al. v. SQUIRES, Inc.**

**SQUIRES, Inc. v. CAVU CLOTHES, Inc. et al.**

**Nos. 11053, 11054.**

United States Court of Appeals Sixth Circuit.

Sept. 8, 1950.

Writ of Certiorari Denied Jan. 15, 1951.

See 71 S.Ct. 357.

Robert S. Marx, Cincinnati, Ohio, Robert S. Marx, Leonard D. Slutz, Nichols, Wood, Marx & Ginter, Frank Zugelter, Gerald B. Tjoflat, and Zugelter & Zugelter, all of Cincinnati, Ohio, on the brief, for Cavu Clothes, Inc., et al., appellants and cross-appellees.

Warren C. Horton, Chicago, Ill., Warren C. Horton, Hinkle, Horton, Ahlberg, Hansmann & Wupper, Earl Freeman, and Freeman & Freeman all of Chicago, Ill., Truman A. Herron and Wood, Arey, Herron & Evans, all of Cincinnati, Ohio, on the brief, for appellee and cross-appellant.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The plaintiffs below, as the owner and licensees of the two patents herein involved, brought this action against Squires, Inc., defendant below, claiming infringement of the patents and seeking an injunction and an accounting. The patents pertain to a sport shirt, one being a design patent and the other being a mechanical patent, both covering the same shirt. The District Judge found the design patent valid and infringed, from which the defendant has appealed. He found the mechanical patent invalid, from which ruling the plaintiff has appealed. The two appeals were heard together, and in this opinion the parties will be referred to in their capacities as plaintiffs and defendant in the Court below.

Montie M. Brohard, Jr., owner of the patents, made application for the design patent on December 23, 1944. The patent, design 146,895, was granted June 10, 1947. The application stated that Brohard had "invented a new, original, and ornamental Design for a Shirt," reference being made to the accompanying drawings showing front and rear views of the shirt. The claim was for "The ornamental design for a shirt, as shown."

Brohard filed his application for the mechanical patent on January 25, 1945, and mechanical patent 2,428,198 was granted on September 30, 1947. The application stated that objects of the invention were to improve effectiveness in providing maximum protection against cold and drafts, to provide a garment which presented a smooth unbroken bosom portion of agreeable appearance, and which could be worn in good taste either with or without a necktie or scarf, and to so construct the garment that the smooth unbroken bosom portion would be exposed to present an attractive plain front, when a coat was worn over the garment in a conventional manner. The shirt is characterized by a zipper closure, the upper terminus of which lies beneath the right collar flap so as to be concealed thereby. The zipper closure then extends diagonally downward in a prolongation of the inner line of the right collar point to-

ward the right hip of the wearer, stopping at a point slightly below the belt line. From that point a vertical unfastened opening extends to the bottom edge of the shirt. This diagonal direction of the zipper closure on the right side of the wearer, together with the concealment of the upper portion of the zipper by the long collar points, provides an unbroken front appearance with no break between the collar points or in the bosom area. When a coat is worn over the shirt the zipper closure is entirely concealed, presenting a shirt front with a smooth appearance and unbroken by any collar button, center seam or opening. The plaintiffs claim that when the shirt is worn without a coat the zipper closure diagonally prolonging the line of the collar point provides a stream-lined appearance; that the elimination of a center opening avoids the usual buckling found in conventional shirts; that when the zipper is open the throat and chest of the wearer are protected against strong winds which on account of the angle blow the flaps of the shirt against the chest instead of causing the shirt to billow; and that the diagonal zipper and the lower vertical opening avoids bulging when the shirt is worn inside the belt, and also provides an attractive appearance when worn outside the belt. The patent contains but a single claim which describes "A garment comprising a front and back, terminating in an upper neckline, a fold-over collar attached at said line and having flap portions overlying said front on opposite sides of the vertical center line of the front," with an unbroken front resulting from a diagonal zipper closure extending from the neckline towards the hip of the wearer on the same side with the upper terminus of the slide fastener lying beneath the collar flap so as to be concealed thereby.

The complaint charges the defendant Squires, Inc., a retailer in Cincinnati, Ohio, with selling sport shirts in Cincinnati which infringed both the design and mechanical patents. The defendant challenges the validity of each patent, on several different grounds, and denies infringement. The District Judge found with respect to the design patent that the sport shirt covered by the patent disclosed "an unusually attractive appearance, the design being new, original, ornamental and the product of invention," and that in the eyes of an ordinary observer, giving such attention as a purchaser usually gives, the design of the "Corsair" sport shirt sold by the defendant was substantially the same as that covered by the design patent. As to the mechanical patent, he found that in view of the state of the prior art the features of construction disclosed by the patent "although novel and useful, respresented only the exercise of mechanical skill rather than patentable invention." He held the design patent valid and infringed by the defendant. He held the mechanical patent invalid.

The statutory requirements for a design patent differ somewhat from those for patentable inventions generally. Sec. 73, Title 35 U.S.C.A., provides "Any person who has invented any new, original and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof, and not patented or described in any printed publication in this or any foreign country before his invention thereof, * * *" may, under certain conditions, obtain a patent therefor. As pointed out in Gorham Mfg. Company v. White, 14 Wall. 511, 81 U.S. 511, 524-525, 20 L.Ed. 731, the purpose of the statute is to give encouragement to the decorative arts. It contemplates not so much utility as appearance; it protects a design only when it is new and original. The thing invented or produced for which a patent is given, is that which gives a peculiar or distinctive appearance to the article to which it may be applied, or to which it gives form. It is the new thing, or product, which the patent law regards. The construction to be given to the statutory requirements was stated by this Court in Western Auto Supply Company v. American-National Co., 6 Cir., 114 F.2d 711, as follows: When the idea is adapted or derived by analogy from prior usage, or when it is embodied in a design resembling the prior art in general appearance or central theme, there is no patentable invention; mere mechanical skill is insufficient; the adaptation of old devices

or forms to new purposes, however convenient, useful, or beautiful they may be in their new role, is not invention. The same view was expressed in Capex Company v. Swartz, 7 Cir., 166 F.2d 5, 6, wherein it was stated that a design patent must disclose inventive originality in design and ornamentation, and that mere mechanical skill of the artist is no more sufficient to constitute inventive art in the case of the design artist than in the case of the engineer. In F.I.A.T. v. A. Elliott Ranney Co., 2 Cir., 249 F. 973, it was pointed out that the test of invention in design patents is precisely like that in mechanical, the question being whether it was beyond the powers of the ordinary designer.

█ Applying such test to the design offered in the present case, we are of the opinion that it fails to meet the requirements. The features chiefly relied upon by the plaintiffs are the diagonal zipper closure, the concealment of its upper terminus under the righthand flap of the turn-over collar and the unbroken bosom front. All of these are disclosed by the prior art. Aronson 2,143,931, January 17, 1939, cited by the Patent Office, discloses a sporting jacket having a zipper opening which starts underneath the collar at the right of the wearer and extends diagonally to the center of the jacket where it then drops in a straight line. The Sears Roebuck catalogue No. 181, 1940, p. 407, also referred to by the Patent Office, discloses an aviator jacket styled "Mainliner" which is closed by a zipper which starts at the right side of the collar and runs in a straight diagonal line to the bottom of the jacket at a point slightly right of the center of the jacket. Both Greenberg 1,993,297, filed May 24, 1933, and Gold 1,951,240, filed November 22, 1933, not cited by the Patent Office in the design application but cited by it in the mechanical application, show sport jackets with turn-over collars and zipper closures. The following patents were not cited by the Patent Office but were offered in evidence: Beach 570,081, 1896, discloses a garment with a turn-over collar, an opening running in a generally diagonal direction to the left side of the wearer and a straight opening dropping from that point to the edge of the garment, although the closure was apparently by snaps instead of by zipper. Turcotte Des. 129,909, filed September 8, 1941, discloses a diagonal zipper opening starting at one shoulder and extending across the body. Lardner Des. 130,692, filed September 27, 1941, discloses a reading jacket with a diagonal opening starting at the collar line in the back and running to the waist with an unbroken front appearance. Cooper 2,010,349, filed 1932, discloses a garment having a straight up and down zipper opening, offset, however, from the center of the garment with the upper terminus of the zipper concealed underneath the fold-over collar. Evidence was also introduced by the defendant showing that the Angelica Jacket Company of Chicago as early as 1941 manufactured and sold professional coats and smocks with diagonal zipper closures offset from the center of the collar. One of these, styled "Angelica White Twill" discloses the zipper closure starting on the right side of the collar extending diagonally to the right side of the wearer and then downward to a point at about the hips with the resulting unbroken front, rather similar to the zipper closure now under consideration. The Patent Office rejected the application in each of three considerations of it, relying upon Aronson, Coleman and the Sears Roebuck Catalogue, and pointing out that angularly disposed slide fasteners which start in the vicinity of the collar are old and that the unbroken front panel was clearly taught by Coleman. Following an appeal to the Patent Office Board of Appeals and a remand to the Primary Examiner the patent was later granted following a showing of commercial success, but without retraction of previous Patent Office statements as to lack of invention over the prior art. In our opinion, the Brohard design patent does not show, in the light of the prior art, any exceptional talent beyond the range of the ordinary designer familiar with the prior art, and lacks the inventive quality required for a patentable design.

We are not unmindful of the attractive appearance of the shirt in question and its protective features against wind and drafts. The authorities above referred to

clearly show that a garment may be pleasing in appearance and still not be the product of invention. Also the advantages resulting from a closure offset from the center are utilitarian rather than ornamental or decorative in character. Ferd Messmer Mfg. Co. v. Albert Pick & Co., 8 Cir., 251 F. 894; Rowe v. Blodgett & Clapp Co., 2 Cir., 112 F. 61.

Plaintiffs have strongly urged upon us the theory that there is a presumption of validity arising from the grant of the patent, and that the commercial success enjoyed by the patented shirt is strong evidence in support of the validity of the patent. Both of these arguments were considered and answered by this Court in Western Auto Supply Co. v. American-National Co., supra, making it unnecessary to discuss them again at this time. See also Wolverine Fabricating & Mfg. Co. v. Detroit Gasket & Mfg. Co., 6 Cir., 148 F. 2d 399, 402.

The prior art fully sustains the District Court's conclusion that the features of construction disclosed by the Brohard mechanical patent No. 2,428,198, although novel and useful, represented only the exercise of mechanical skill rather than patentable invention. Locating the upper terminus of the zipper or slide fastener underneath the collar is disclosed by both Aronson 2,143,931 and Cooper 2,010,-349. In both of them it is offset from the center. The diagonal closure is disclosed by Beach 570,081, Turcotte 129,909, Underdown 167,139 · (1875), Lardner 130,692 and Wallace 1,973,421 (1932) and was used in the Angelica White Twill garments manufactured by the Angelica Jacket Company of Chicago. The unbroken front is the result of the diagonal closure. It is also shown by the Angelica White Twill garments. The particular location of the upper terminus of the zipper and the angle of the diagonal closure represented only the exercise of mechanical skill. The District Court properly held the patent invalid.

The judgment of the District Court is reversed in Appeal No. 11054 and is affirmed in Appeal No. 11053.