**SCHNADIG CORPORATION,**
Plaintiff-Appellee,

v.

**GAINES MANUFACTURING CO., INC.,**
Defendant-Appellant.

No. 73–1470.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1973.

Decided March 12, 1974.

---

Roy Keathley, Memphis, Tenn., on brief, for defendant-appellant; David Rabin, Greensboro, N. C., of counsel.

Timothy L. Tilton, John W. Chestnut, Chicago, Ill., on brief, for plaintiff-appellee; Henry T. V. Miller, Memphis, Tenn., of counsel.

Before PHILLIPS, Chief Judge, MILLER, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This is an appeal from a decision of the District Court holding Design Patent No. 212,602 valid and infringed.[1] We affirm.

Schnadig Corporation (Schnadig) is the owner of Design Patent No. 212,602 for a "Sectional Sofa." The patent issued on November 5, 1968, on an application filed by Robert A. Gera on March 14, 1968.

Appellee, Schnadig, is a Delaware corporation having its company offices in Chicago, Illinois, and production facilities in many states. Schnadig is engaged in the manufacture and sale of living room furniture, including sectional sofas.

Appellant, Gaines Manufacturing Co., Inc. (Gaines), is a Tennessee corporation with its headquarters in McKenzie, Tennessee. Gaines is also engaged in

---

1. 177 U.S.P.Q. 313 (W.D.Tenn.1973).

the manufacture of living room furniture.

Jurisdiction arises under 28 U.S.C. § 1338(a).

## Background

Schnadig's Vice-President for Design, Robert A. Gera, created the patented design during November and December 1967. Mr. Gera first prepared a group of sketches and then constructed a half-scale clay model. Further refinements were effected and a full scale prototype was constructed. In January 1968 the sofa was displayed at the Winter Furniture Markets. It was designated as the Model 4000 and was the feature unit of Schnadig's new Corona Collection. The sofa was an immediate success, remained extremely popular in subsequent years and has enjoyed respect throughout the furniture industry.

The patented design is for an L-shaped or "corner-type" sectional. It consists of a 2, 3 seat ottoman style sofa resting on a pedestal base. The two seat section is bounded on one side by a curved arm. The longer section is armless and adjoins a separate rectangular ottoman. Extensive use is made of wood trim, much of it in the form of rope turnings. Although the sofa could broadly be classified as of Spanish style, the overall effect is one of warm and inviting as opposed to the cold harsh lines of traditional Spanish style sofas. The design is illustrated in the patent drawing:

Schnadig admits that the component parts of the sofa combination were generally old and known in the trade. However, they argue that the overall appearance of the styling and decoration is patentable. They contend and the District Court found that the Gera design was a creative design, rather than a restyled design, which represented a new concept embodying a new and distinctive style. Judge Wellford characterized the style as "warm Spanish" and found that it involved distinctive differences in overall shape, form, appearance and impression from any of the prior art designs.

Gaines challenges the holding of the District Court on three grounds: 1) the patent is anticipated by and obvious over the prior art; 2) the patent was procured by fraud or unclean hands in that more pertinent and relevant prior art was concealed, suppressed and withheld from the Patent Office; and 3) there is no infringement.

## Prior Art

The prior art showed 2, 3 seat ottoman sectional sofas in Modern, Contemporary, Spanish and Mediterranean styles. Additionally, pedestal bases, semi-circular back cushions, armless sectional units, curved arm sectional units and rope turnings were known in the art.

However, the overall appearance and emphasis of the art was either Contemporary or Mediterranean with emphasis on horizontal, angular or rectangular features, i. e., linear qualities, and was cold and harsh. To the contrary, the Gera design was smoothly flowing, warm and inviting.

With respect to specific references in the prior art, Gaines challenges Judge Harry W. Wellford's determination that the Schnadig Model 9020 and the Gaines Model 565 were not prior art.

Relying on Illinois Tool Works, Inc. v. Solo Cup Co., Inc., 461 F.2d 265, 269–270 (7th Cir. 1972), and Application of Facius, 408 F.2d 1396, 1406 (CCPA 1969), Judge Wellford refused to include the Model 9020 in the prior art because it was Gera's own invention and was not disclosed to the public more than one year prior to the filing date of the Gera patent. Judge Wellford, after noting that the Gaines Model 565 comprised "substantially the same design" as the Model 9020, also refused to include it in the prior art because Gaines had failed to prove prior use with clear and satisfactory evidence. *See* Cold Metal Prod. Co. v. E. W. Bliss Co., 285 F.2d 244 (6th Cir. 1960), cert. denied, 366 U.S. 911, 81 S.Ct. 1085, 6 L.Ed.2d 235 (1961).

Even though the District Court excluded these models from the "technical" prior art, it considered them along with the other art in arriving at the final holding of patent validity. We also have considered these models as part of the prior art and, therefore, do not reach the issues and arguments presented in Gaines' brief with respect to their exclusion *vel non*.

### Validity

■ Designs are governed by 35 U.S.C. § 171.[2] To be patentable a design must be new, original, ornamental and nonobvious. Hadco Products, Inc. v. Walter Kidde and Co., 462 F.2d 1265,

1269 (3rd Cir.), cert. denied, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972). Novelty and unobviousness are separate and distinct tests, and both must be presented in a patentable design. In Monroe Auto Equipment Co. v. Heckethorn Mfg. and Supply Co., 332 F.2d 406, 414–415 (6th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L. Ed.2d 93 (1964), we stated:

"We must be careful to make the distinction between novelty and invention in relation to anticipation. Novelty and invention are two separate tests, and anticipation belongs only with novelty. This Court has pointed out that some courts tend, mistakenly, to use anticipation as an equivalent of invention. Allied Wheel Products v. Rude, [6 Cir.] supra, 206 F.2d [752] at 761; Firestone v. Aluminum Co. of America, [6 Cir., 285 F.2d 928] supra. See also, Borkland v. Pedersen, 244 F.2d 501, 502 (C.A. 7). Thus it is incorrect to say that a patent lacks invention because it is anticipated. If it is anticipated it lacks novelty; it lacks invention if it would have been obvious.

"From this it should be clear that even though the prior art may not anticipate the patent in question, the disclosures of the prior art may negative invention. Harvey v. Levine, 322 F.2d 481, 483 (C.A. 6); Allied Wheel Products v. Rude, supra, 206 F.2d at 760; Leishman v. General Motors Corp., 191 F.2d 522, 530 (C.A. 9); Seymour v. Ford Motor Co., 44 F.2d 306, 309 (C.A. 6). That is, a prior device may not be substantially identical to the patented device and therefore cannot anticipate; however, it may be that in the light of this prior device the patented device would have been obvious."

■ The ultimate question of patent validity is one of law and, accordingly, is not subject to the confines of the

---

2. "§ 171. *Patents for designs*

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

"The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

clearly erroneous test mandated by Fed. R.Civ.P. 52(a). *See, e. g.,* Kolene Corp. v. Motor City Metal Treating, Inc., 440 F.2d 77, 81 (6th Cir.), cert. denied, 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971). However, findings bearing on novelty and unobviousness, insofar as they rest upon factual issues, are subject to the clearly erroneous rule. As we stated in *Kolene, supra:*

"The question of 'obviousness' in determining patent validity is a mixed question of both fact and law. Kaiser Industries v. McLouth Steel Corp., 400 F.2d 36, 41 (6th Cir.); National Filters, Inc. v. Research Products Corp., 384 F.2d 516 (5th Cir.); Hensley Equipment Co. v. Esco Corp., 375 F.2d 432 (9th Cir.). In ruling on that question the Supreme Court said:

'(1) Under § 103, the scope and content of the prior art are to be determined;

'(2) Differences between the prior art and the claims at issue are to be ascertained;

'(3) And the level of ordinary skill in the pertinent art resolved.

'(4) Against this background, the obviousness or nonobviousness of the subject matter is determined.

\*   \*   \*   \*   \*   \*

"When the District Court determines items numbered 1, 2 and 3, it makes findings of fact which are binding on appeal unless the findings are clearly erroneous. Rule 52(a), Fed.R.Civ.P. It is the ultimate determination of the trial judge (item number 4 above) which is a conclusion of law with which this Court may disagree based on the established findings of fact. See Monroe Auto Equip-

ment Co. v. Heckethorn Mfg. & Sup. Co., 332 F.2d 406 (6th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L. Ed.2d 93." [3]

Appellant contends that the clearly erroneous standard is inapplicable to the extent that findings rest on documentary evidence. The law in this Circuit is well settled to the contrary. *See* H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co., 437 F.2d 244, 246 (6th Cir.), cert. denied, 404 U.S. 885, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971); United States Steel Corp. v. Fuhrman, 407 F.2d 1143, 1145–1146 (6th Cir. 1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2162, 26 L.Ed.2d 542 (1970); Commissioner v. Spermacet Whaling & Shipping Co., S/A, 281 F.2d 646 (6th Cir. 1960).

Judge Wellford found that the patented design was not anticipated by the prior art. Gaines does not strenuously contest this holding. However, in the nature of a blanket attack of the District Court's finding of novelty,[4] they, apparently, propose a rather broad definition of anticipation.

■ The test for novelty in design patents is the same as for utility patents. 35 U.S.C. § 171, *supra.* With respect to the latter, this court has stated that a description of a patented invention within the meaning of 35 U.S.C. § 102 must be in:

"[S]uch full, clear and exact terms as to enable any person skilled in the art or science to which the invention appertains, to practice the invention. Vague and general representations are not sufficient in law to support the defense of anticipation. . . . " Ballantyne Instruments and Electronics, Inc. v. Wagner, 345 F.2d 671, 673–674 (6th Cir. 1965).

---

3. Findings bearing on the issue of novelty are included in items numbered 1 and 2.

4. "§ 102. *Conditions for patentability; novelty and loss of right to patent*

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or

a foreign country, before the invention thereof by the applicant for patent, or

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or . . . ."

*See also*, Allied Wheel Products, Inc. v. Rude, 206 F.2d 752, 759–760 (6th Cir. 1953).

▮ Translated into design terminology, novelty is present "when the average observer takes the new design for a different, and not just a modified already existing design." Thabet Manuf. Co. v. Kool Vent Metal Awning Corp. of America, 226 F.2d 207, 212 (6th Cir. 1955). This is the prevailing test. *See, e. g.*, Rains v. Cascade Industries, Inc., 402 F.2d 241, 247 (3rd Cir. 1968); Hygienic Specialities Co. v. H. G. Salzman, Inc., 302 F.2d 614, 617 (2d Cir. 1962); Application of Bartlett, 300 F.2d 942, 943, 49 CCPA 969 (1962).

▮ In determining the validity of a design patent, it is the appearance of the article as a whole, the tout ensemble, that must be compared with the prior art, since it is the appearance that constitutes the contribution to the public. Gorham Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731 (1871); *Hadco Products, Inc., supra*, 462 F.2d at 1269; Schwinn Bicycle Co. v. Goodyear Tire and Rubber Co., 444 F.2d 295 (9th Cir. 1970); Glen Raven Knitting Mills, Inc. v. Sanson Hosiery, 189 F.2d 845 (4th Cir. 1951).

We agree with Judge Wellford's holding that the patented design was not anticipated by the prior art.

Any discussion of obviousness [5] would be incomplete without considering the oft-quoted words of the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966):

"While the ultimate question of patent validity is one of law, A. & P. Tea

Co. v. Supermarket Corp., *supra*, [340 U.S. 147] at 155 [71 S.Ct. 127, 95 L. Ed. 162], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. See Note, Subtests of 'Nonobviousness': A Nontechnical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169 (1964.)"

▮ Unlike the "average observer" test for novelty, obviousness is measured by the skill of the "ordinary designer." Cavu Clothes, Inc. v. Squires, Inc., 184 F.2d 30, 33 (6th Cir. 1950), cert. denied, 340 U.S. 920, 71 S.Ct. 357, 95 L.Ed. 665 (1951); Forestek Plating & Mfg. Co. v. Knapp-Monarch Co., 106 F.2d 554, 559 (6th Cir. 1939.)[6]

▮ Even though a design is a combination of old elements, it may, nevertheless, be patentable if it would not be obvious to a designer having ordinary skill in the art. Sel-O-Rak Corp. v. Henry Hanger & Display Fixture Corp. of America, 232 F.2d 176, 180 (5th Cir.), cert. denied, 352 U.S. 870, 77 S.Ct. 95, 1

---

5. "§ 103. *Conditions for patentability; nonobvious subject matter*

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the

art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made. July 19, 1952, c. 950, § 1, 66 Stat. 798."

6. *But see* Application of Laverne, 356 F.2d 1003, 1006, 53 CCPA 1158 (1966) (obviousness measured by ordinary intelligent man); *Schwinn Bicycle Co., supra*, 444 F.2d at 299 (obviousness measured by ordinary intelligent man).

L.Ed.2d 76 (1956); *Glen Raven Knitting Mills, supra,* 189 F.2d at 850; *Forestek Plating & Mfg. Co., supra,* 106 F.2d at 559; Protex Signal Co. v. Feniger, 11 F.2d 43, 46 (6th Cir. 1926).

■ However, mere differences between the design and the prior art are insufficient to constitute patentability when they would be obvious to a designer with ordinary skill in the art. Even though the design is "new and pleasing enough to catch the trade" it may, nevertheless, be obvious. Hygienic Specialties Co. v. H. G. Salzman, Inc., *supra* 302 F.2d at 618. *See also Cavu Clothes, supra,* 184 F.2d at 33–34; Western Auto Supply Co. v. American-National Co., 114 F.2d 711, 712 (6th Cir. 1940).

■ Judge Wellford determined the scope and content of the prior art, the differences between the Gera design and the prior art and the level of ordinary skill in the art. He determined that the Gera design was a new concept and distinctively different from the prior art in overall shape, form, appearance and impression. He stated that "the Gera Patent design, considered as a whole, comprises [non]obvious design subject matter . . . ." We have studied the record and examined the pictures of the prior art sofas and are in complete agreement with Judge Wellford's holding.

Even though we do not consider it a close question, we find secondary considerations that add further support to the nonobviousness of the Gera design. The patented design met with unprecedented commercial success and was the biggest seller in Schnadig's history. Still another secondary consideration is the fact that the Gera design was substantially copied by Gaines. *Sel-O-Rak Corp., supra,* 232 F.2d at 179.

Appellant has challenged Judge Wellford's application of the obviousness test. Specifically, Gaines alleges that the judge confused "anticipation" with "obviousness" and was not aware that references could be combined.

We find this allegation to be untenable. A reading of the opinion of Judge Wellford shows his awareness of combinations of references. When he was discussing the exclusion of the Model 9020 from the prior art, he stated that defendant "seeks to use it in combination with other art references to attack the obviousness of the patent in suit."

Moreover, once it has been determined that the prior art does not anticipate the claimed invention and the differences between the two have been catalogued, it is well nigh implicit and most probably inevitable that combinations of references be considered in determining whether the differences would be obvious to one of ordinary skill in the art.

■ Appellant also challenges Judge Wellford's finding that, "under the circumstances of this case," the presumption of validity contained in 35 U.S.C. § 282[7] was appropriate. Specifically, Gaines contends that the presumption of validity is inconsistent with Judge Wellford's conclusion that the prior art cited by Gaines was, for the most part, more pertinent and relevant than the art considered by the Patent Office.

■ We have stated repeatedly that the presumption of validity is weakened when the Patent Office has not considered pertinent and material prior art. *See, e. g.,* Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp., 445 F. 2d 911, 914, 916 (6th Cir. 1971), cert. denied, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972); *Monroe Auto Equipment Co., supra,* 332 F.2d at 412–413; Preformed Line Products Co. v. Fanner Mfg., 328 F.2d 265 (6th Cir.), cert. denied, 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed. 2d 51 (1964). By pertinent and material prior art, we mean art that would ordinarily be expected to influence the Patent Examiner's decision with respect to the patentability of the invention.

7. "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

Alleged art that is cumulative to cited art does not weaken or destroy the presumption of validity.

■■■■ Moreover, general statements that the presumption is weakened or destroyed by the Patent Examiner's failure to consider all pertinent prior art cannot be viewed in a vacuum and relied upon as a matter of course. The facts of each case present a different problem. "The degree by which [the presumption] is weakened depends on a balancing of the pertinence of the newly cited art with the pertinence of the art considered by the Patent Office." Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6th Cir. 1974). To forestall any doubt, we agree with Judge Wellford that, under the facts of this case, and considering the pertinence of the newly cited prior art, the design patent was entitled to a presumption of validity. To quote from the record: "[N]one [of the references] are in the same . . . 'ball park.'"

### Infringement

■■■■ Infringement is a question of fact, and, therefore, the clearly erroneous standard applies. Tappan Co. v. General Motors Corp., 380 F.2d 888, 891 (6th Cir. 1967). The test for infringement in design patent cases is the ordinary observer test as crisply stated by the Supreme Court over 100 years ago in Gorham Co. v. White, supra:

> "Plainly, it must be sameness of appearance, and mere difference of lines in the drawing or sketch, a greater or smaller number of lines, or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity. An engraving which has many lines may present to the eye the same picture, and to the mind the same idea or conception as another with much fewer lines. The design, however, would be the same. So a pattern for a carpet, or a print may be made up of wreaths of flowers arranged in a particular manner. Another carpet may

have similar wreaths, arranged in a like manner, so that none but very acute observers could detect a difference. Yet in the wreaths upon one there may be fewer flowers, and the wreaths may be placed at wider distances from each other. Surely in such a case the designs are alike. The same conception was in the mind of the designer, and to that conception he gave expression." 81 U.S. at 526–527.

> "The purpose of the law must be effected if possible; but, plainly, it cannot be if, while the general appearance of the design is preserved, minor differences of detail in the manner in which the appearance is produced, observable by experts, but not noticed by ordinary observers, by those who buy and use, are sufficient to relieve an imitating design from condemnation as an infringement.

> "We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." Id. at 528.

See also Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606 (1893); Tappan Co., supra, 380 F.2d at 891.

■■■■ Judge Wellford heard much testimony to the effect that the Gaines Model 495 would appear substantially identical to the ordinary consumer. He further found that the differences between the Gera sofa and the Model 495 were minor and probably attributable to cost. We are mindful of the oft-quoted words of the Supreme Court in Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950):

> "One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to con-

ceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement."

We find no error in the District Court's holding of infringement.

### Fraud and Unclean Hands

Finally, we come to appellant's major contention. Gaines alleges that Schnadig "concealed, suppressed and withheld" pertinent and relevant prior art from the Patent Office. The District Court found that Schnadig was not guilty of any "deliberate or negligent failure to disclose material facts on the proof and record." Such a finding can be reversed only if it is clearly erroneous. Becton Dickinson & Co. v. Robert P. Scherer Corp., 211 F.2d 835, 838 (6th Cir. 1954).

Appellant's fraud or unclean hands argument first arose, apparently as an afterthought, in a post-trial brief. Schnadig had petitioned the Patent Office to grant the Gera application special examining status on the basis of actual infringement. Accompanying the petition was an affidavit by Gera's patent attorney which established that he had caused a search of the prior art to be made by a Washington associate. The search covered the classes and subclasses suggested by the Patent Examiner in charge of the art, and a number of references were then cited to the Patent Office. Applicant's attorney then stated that the search had failed to disclose any anticipatory reference and, in his opinion, the application was allowable over the cited prior art.

The Patent Examiner conducted his own independent search and cited two of the references furnished him by the applicant and three additional ones. The cited art was not applied against the design.

Appellant also points to testimony by the patentee and Mr. Schnadig, the President of Schnadig Corp., to the effect that they did not know what prior art was cited to and by the Patent Office during the prosecution of the Gera design.

Based on Judge Wellford's finding that art cited by Gaines was more pertinent and relevant than art cited to or by the Patent Office and the above facts, Gaines infers that Schnadig Corporation intentionally and deliberately concealed, suppressed and withheld prior art from the Patent Examiner. Gaines contends that the Patent Examiner would not have allowed the Gera design if he had considered the concealed art.

Based upon our review of the entire record and particularly the evidence stated, *supra*, we agree with Judge Wellford's finding that Schnadig did not intentionally or negligently fail to disclose material facts to the Patent Examiner. While we do not condone the practice whereby a patent attorney keeps an inventor or others involved with the invention and having knowledge of the prior art in the dark with respect to the file wrapper, there is not one shred of evidence in this record that shows that pertinent and material evidence was concealed from the Patent Office. On the contrary, as Mr. Gera and others testified at trial, and as found by Judge Wellford, the design was a new concept and was distinctly different from the prior art.

█ Fraud or unclean hands are not to be lightly inferred. They must be established by "clear, unequivocal and convincing" evidence. Becton-Dickinson & Co. v. Robert P. Scherer Corp., 106 F. Supp. 665, 671 (E.D.Mich.1952), aff'd, 211 F.2d 835 (6th Cir. 1954). *See also* Scott Paper Co. v. Ft. Howard Paper Co., 432 F.2d 1198, 1204 (7th Cir. 1970), cert. denied, 401 U.S. 913, 91 S.Ct. 882, 27 L.Ed.2d 812 (1971). We conclude that Gaines did not meet this burden.

Appellant has also proposed an additional theory of recovery in the nature of strict liability:

"Once the plaintiff took affirmative action to submit prior art it could not discharge its uncompromising duty by submitting only less and irrelevant prior art." Gaines Brief at 22.

"Whether intentional, negligence, inadvertence or honest mistake does not absolve Plaintiff's conduct and constitutes fraud upon the Patent Office. One who conceals pertinent or material evidence from the Patent Office does so at his own peril." Gaines Brief at 26–27.

■ We have not been directed to any case that extends the doctrine of inequitable conduct so as to impose strict liability. Nor could we find any case that even extends it to the facts of this case where: 1) There was no showing that prior art was intentionally or negligently concealed. 2) There was no showing that the allegedly "concealed" art was even known to the plaintiff. 3) The art while more pertinent was not anticipatory or indicative of obviousness. 4) Plaintiff at all times believed the design to be patentable.

In Precision Instrument Mfg. Co. v. Automotive Maintenance Machine Co., 324 U.S. 806, 818, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945), the Supreme Court described the duty which a patent applicant owes to the Patent Office:

"Those who have applications pending with the Patent Office or who are parties to Patent Office proceedings have an *uncompromising duty* to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue. * * * Public interest demands that all facts relevant to such matters be submitted formally or informally to the Patent Office, which can then pass upon the sufficiency of the evidence. Only in this way can that agency act to safeguard the public in the first instance against fraudulent patent monopolies."

In Charles Pfizer & Co., Inc. v. F. T. C., 401 F.2d 574, 579 (6th Cir. 1968), cert. denied, 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969), we stated:

"The Patent Office, not having testing facilities of its own, must rely upon information furnished by applicants and their attorneys. Pfizer and Cyanamid, like all other applicants, stood before the Patent Office in a confidential relationship and owed the obligation of frank and truthful disclosure."

In addition to these cases, appellant relies on Beckman Instruments, Inc. v. Chemtronics, Inc., 428 F.2d 555 (5th Cir.), cert. denied, 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970), and Monsanto Co. v. Rohm and Haas Co., 456 F. 2d 592 (3rd Cir.), cert. denied, 407 U.S. 934, 92 S.Ct. 2463, 32 L.Ed.2d 817 (1972). These cases are easily distinguishable from the case at bar. In *Beckman* the patentee deliberately and knowingly concealed a reference that was known to be anticipatory and intentionally made misrepresentations to the Patent Office. In short, there was an intent to deceive. In *Monsanto,* although the court did not require a specific intent to deceive, the patentee had intentionally made misrepresentations by presenting half-truths to the Patent Office and deliberately made representations that were inconsistent with those made on two prior occasions.

■ The evaluation of prior art as it bears on the patentability of an invention is a matter of good faith judgment. As long as the patent applicant fulfills his "uncompromising duty" of good faith and conducts the prosecution with utmost candor, making a frank and truthful disclosure, he is not required to "list out the full spectrum of his knowledge to establish [his] bona fides." Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1102–1103 (5th Cir. 1972).

Appellant's strict liability approach to prior art citation was analyzed in detail by Judge Mansfield in Xerox Corp. v. Dennison Mfg. Co., 322 F.Supp. 963, 967–970 (S.D.N.Y.1971).

In Troxel Mfg. Co. v. Schwinn Bicycle Co., 465 F.2d 1253, 1260 (6th Cir. 1972), we refused to create an implied warranty of validity in a patent license agreement. Similarly, we refuse to create it

indirectly by imposing strict liability on the results of a good faith prior art search.

The judgment of the District Court is affirmed.