Carl SCHENCK, A.G.

v.

NORTRON CORPORATION.

Civ. A. No. 80–3278.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 21, 1982.

Russell & Tucker, Robert B. Russell, Boston, Mass., Thomas H. Peebles III and Lawrence Maxwell, Nashville, Tenn., for plaintiff.

Sheldon W. Witcoff/Ronald E. Larson, Allegretti, Newitt, Wilcoff & McAndrews, Chicago, Ill., R. Dale Grimes, Nashville, Tenn., for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

The plaintiff Carl Schenck A.G. brings this action to recover damages for an alleged infringement of U.S. Patent No. 3,182,511 (the "511" patent or "Federn" patent). For the reasons stated, this Court concludes that the plaintiff should prevail on its claim of patent infringement. Pursuant to Fed.R.Civ.P. 52, the following will constitute the Court's findings of fact and conclusions of law.

The plaintiff alleges that the defendant Nortron Corporation's Model 7402 wheel balancing machine incorporates the invention described in claims 1, 2 and 5 of the 511 patent. The invention disclosed in the patent was discovered in the early 1960's by Schenck employees Klaus Federn, Heinrich Geiss and Alfred Seibert. The defendant challenges the validity of the patent on several independent grounds and disputes plaintiff's allegation of infringement.

## I.

The issues presented necessitate a brief discussion of some of the principles of wheel balancing drawn primarily from the testimony of the plaintiff's expert witness Dr. Douglas Muster, of the University of Houston. The following constitutes factual findings by the Court presented as background for the Court's analysis in Part III of this Memorandum.

Imbalance in automobile tires and in rotors in general is a result of an unequal distribution of mass with respect to a desired axis of rotation. When an imbalanced rotor is set in motion, the mass imbalance generates a force. This force, if viewed in a reference frame that rotates with the rotor, is called the centrifugal force and its magnitude depends upon the mass imbalance and on the square of the frequency of rotation. Rotation of an imbalanced rotor also generates a twisting force in situations when the center of gravity of the rotor is on the axis of rotation but the opposite ends of the rotors are equally out of balance. The twisting force is only present while the rotor is in motion and its magnitude depends upon the frequency of rotation.

The plaintiff, the defendant and the industry have adopted the following technique to measure the centrifugal and twisting forces generated by rotors in motion. The technique requires mounting the rotor on at least two bearings atop carefully designed pedestals. The motion of the axis of rotation at each pedestal then may be observed and measured.

Prior to 1960, the soft-bearing method, which is extremely sensitive and accurate, was used to balance rotors. This method allowed the axis of rotation to move with relative freedom in the measuring direction and inhibited motion in other directions. Using this method, a rotor if mounted on two pedestals and set in motion vibrates with an amplitude (dimension of displacement) of vibration indicative of the force of imbalance; so long as the frequency of rotation and the fundamental frequency of the vibratory mass are properly chosen. These frequencies must be chosen such that the frequency of rotation exceeds twice the fundamental or natural frequency (critical speed) of the system composed of the pedestal and the mass it supports. The soft-bearing method, however, has numerous disadvantages. Because the axis of rotation is not fixed, the motion of an unbalanced rotor is not a simple rotation. As a result, the balancing of a single rotor requires calibration runs and numerous measurements until the proper correction weight is in place. In addition, the speed at which the rotor rotates must exceed the critical speed when resonance may cause so large an amplitude of vibration as to damage the

measuring system or make the measurement dangerous.

Neither the plaintiff's patent nor the defendant's wheel balancing machine uses a soft-bearing method to solve the problem of measuring imbalance in rotors. Instead, the parties rely on what has been termed a hard-bearing method. This method has been available since at least the early 1920's when it was described in U.S. Patent 1,599,922. But only since 1960 has the hard-bearing method grown from infrequent use to become the dominant method for the balancing of rotors. A pedestal for a hard-bearing balancer, as the name implies, is significantly stiffer or more resistant to the motion in the measuring direction than its soft-bearing counterpart for balancing a given rotor. A pedestal to be used in a hard-bearing machine also has some form of transducer, which gives a direct reading of the force of imbalance, rather than measuring the amplitude of displacement caused by the imbalance as in a soft-bearing machine. Otherwise, the apparatus used in a hard-bearing balancer is quite similar to that used in a soft-bearing machine.

Professor Muster's testimony, which the Court finds credible established that a given pedestal could be used in either a hard or soft-bearing machine. The critical factor in determining whether a pedestal is suitable for hard or soft balancing is the relationship between the intended frequency of rotation and the fundamental frequency (critical speed) of the pedestal/support system. In a hard-bearing machine, the frequency of rotation must be less than ½ the fundamental frequency of the pedestal/support system, rather than twice the fundamental frequency as in a soft-bearing machine.

The plaintiff contends and this Court agrees that until 1960 few found the hard-bearing method commercially useful. Practitioners before 1960 thought it desirable to increase rotational speeds in order to generate larger more precisely measurable forces but wanted to avoid rotational frequencies of sufficient magnitude that distortions due to resonance occurred. Many practitioners introduced damping into their measuring devices in order to suppress resonance as they reduced the difference between the speed of rotation and the fundamental frequency of the measuring system. Mr. Federn, in his work which led to the 511 patent, determined that damping which was intended to eliminate errors due to resonance actually introduced other errors in measurement, especially in locating the radial position where a counterweight should be placed.

II.

There is no dispute in this case concerning the basic principles of patent law. In an infringement suit, the plaintiff must prove that it is the owner of a valid patent and that the defendant's device is included within the claims of the patent. The validity of a patent is determined from an examination of the newness, utility, and non-obviousness of the invention described in the patent claims. This examination requires information concerning the state of the art in the field the patent will be practiced and is initially undertaken by the Patent Office. The Patent Office relies on the inventor to present information to establish that the claimed invention meets the prerequisites of patentability. If the Patent Office finds the prerequisites present, a patent is issued and that patent is afforded a presumption of validity, 35 U.S.C. § 282. See, e.g., Reinke Mfg. Co., Inc. v. Sidney Mfg. Corp., 594 F.2d 644, 646 (8th Cir.1979); Pro-Col Corp. v. Commissioner of Patents, 436 F.2d 296, 297 (D.C.Cir.1970). The proceedings before the Patent Office are ex parte and the presumption may be lost if the information disclosed to the office is incomplete. See Schnadig Corp. v. Gaines Mfg. Co., 494 F.2d 383, 387 (6th Cir.1974); Eli Lilly & Co. v. Generix Drug Stores, Inc., 460 F.2d 1096 (5th Cir.1972). A court, in an infringement suit, must review the Patent Office determination. If valid, then the Court must also determine whether the defendant's device infringes or reads-on the claim of the plaintiff's patent.

## III.

Against this background, the Court can evaluate the plaintiff's assertion of patent infringement by the defendant. The plaintiff relies on the statutory presumption of validity accorded to all patents under 35 U.S.C. § 282 and points to the change in the balancing industry which the Court has previously described. The defendant counters by alleging that the plaintiff's patent lacks invention and is not useful. The defendant strongly relies on the plaintiff's expert witness' testimony that the machine described in the 511 patent disclosure has never been used as an automobile wheel balancer. Moreover, the defendant emphasizes that no wheel balancer has ever been sold in this country directly using the patented invention.

The proof indicates that the plaintiff's invention was duly registered with the Patent Office. This being established, the plaintiff's invention enjoys a presumption of validity. The Court must now consider the defendant's arguments that the plaintiff's duly registered patent is not valid.

Some courts have held that uselessness is an almost "infallible test" of non-invention. *Clark v. Wright Aeronautical Corp.,* 162 F.2d 960, 966 (2d Cir.1947). However, uselessness is not shown here. A patent is not rendered useless simply because it has not been used by its owner in the United States for a particular application. The defendant's evidence merely establishes lack of use by the owner. It does not establish non-invention under the theory of uselessness and, therefore, is insufficient to overcome either the presumption of validity or the plaintiff's evidence in support of the patent.

The defendant also asserts that the "making [of] a four-piece support plate into a single integral and gaplessly continuous piece is an old and obvious expedient which does not rise to the standard of invention required for the grant of a valid patent". Defendant's Post-Trial Memorandum at 2. The reference to a standard of invention against which a particular patent must be measured appears to refer to principles developed before the incorporation of the non-obvious test into the patent statutory scheme. 35 U.S.C. § 103. The Supreme Court in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), explained that the non-obvious test incorporated in 35 U.S.C. § 103 is a clarification of an earlier judicially developed test of invention. The *Graham* court stated that this test of non-obviousness required an inquiry into the prior art in the area of the claimed invention. The goal of the inquiry is to determine the extent to which the claimed invention was a non-obvious advance beyond the practice of those skilled in the art at the time. The Court stated that "the emphasis on non-obvious is one of inquiry, not quality, and, as such, comports with constitutional strictures". *Graham,* 383 U.S. at 17, 86 S.Ct. at 693.

Evidence of non-obviousness may take different forms. *See Graham,* 383 U.S. at 17, 86 S.Ct. at 693; *Kaiser Industries Corp. v. McLouth Steel Corp.,* 400 F.2d 36 (6th Cir.1968). The most important is direct evidence, usually in the form of expert opinions, on the advance which the claimed invention made over prior art. In the present case, the only evidence of this nature is the testimony of the plaintiff's expert witness Professor Muster. He testified that the patented invention was not obvious to persons skilled in the balancing art at the time it was made. Additional evidence of non-obviousness may be gathered from the impact the claimed invention had on the market place. An invention which satisfies a long felt need, which achieves great commercial success or which was discovered after the failure of others in similar efforts is more likely to be non-obvious. Such an inference is rebutted, however, if the invention incorporates an element not previously available to inventors. The plaintiff in this case presented evidence of a revolution in the balancing industry brought about between the time of the 511 patent and the present. During this period, the balancing industry has largely abandoned soft-bearing machines whenever possible for hard-bearing machines such as are described in the

511 patent. Hard-bearing machines were known in the art since 1926 when one form was described in U.S. Patent 1599922 and the relative ease of measurement on such a machine was apparent long before the 1960's. Yet prior to the plaintiff's invention, no hard-bearing machine had achieved commercial success. The proof presented strongly supports an inference that the 511 patent describes a non-obvious invention.

The defendant would rebut this proof with its assertion that the 511 patent describes a useless invention. Defendant questions the causal relationship between the shift in the industry's focus and the 511 patent asserting that the 511 patent is essentially a blocking patent with no use other than to restrain competitors. The only evidence which supports these assertions are statements from Professor Muster and Mr. Maus that the 511 patent diagram does not disclose an efficient wheel balancer and that no wheel balancer sold in this country by the plaintiff uses the 511 patent directly. It is the considered judgment of this Court that these statements are largely out of context and the defendant employs them to mean more than was expressed. This Court finds the plaintiff's invention non-obvious. Were the defendant correct in its assertion that a consolidation of elements can never rise to the level of patentable invention, the Patent Office could have eliminated the plaintiff's application. This Court also rejects the defendant's argument that a test of invention other than the non-obvious test is embodied in 35 U.S.C. § 103. The enactment of 35 U.S.C. § 103 was in large part a reaction to the unpredictability of decisions using the invention test as a standard and to interpretations of that test before the statutory change. *Graham,* 383 U.S. at 14–15, 86 S.Ct. at 692, (discussing the applicable legislative history).

The defendant also challenges the disclosure with which the plaintiff supplied the Patent Office when negotiating for the issuance of the 511 patent. The defendant

correctly points out that uncompromising candor is called for from patent applicants in proceedings before the Patent Office and that patents obtained through inequitable means are potentially invalid or unenforceable. *See, e.g., Schnadig Corp. v. Gaines Mfg.,* 494 F.2d 383 (6th Cir.1974); *Eli Lilly & Co. v. Generix Drug Stores, Inc.,* 460 F.2d 1096 (5th Cir.1972). This Court does not agree, however, that the plaintiff failed to meet the required standard.[1]

■ Defendant points to the drawings of a patent issued to Dr. Federn, one of the inventors of the 511 patent, in 1955. One of the patent drawings does not disclose any bolts or other connectors between the side and cross pieces of a support pedestal for use in a balancing machine. The plaintiff's response is that the omission was simply the result of artistic license in the pictorial representation of the device. In support of this response, the plaintiff emphasizes that the defendant refers to a completely different patent than the one at issue. Unlike the patent at issue, the patent referred to by the defendant uses a soft-bearing method which inevitably utilizes spring steel in construction. According to the plaintiff's evidence spring steel cannot be subjected to treatments necessary for welded connections and retain its unique desirable qualities, thus, the unillustrated connections must be present. Moreover, a disclosure in a patent drawing, standing alone, is not prior art. *Trussell Mfg. Co. v. Wilson-Jones Co.,* 50 F.2d 1027 (2d Cir.1931). Although *Trussell* deals with the defense of anticipation by prior art in 35 U.S.C. § 102, its rationale is applicable here because it is impossible to discover from drawings without textual support what invention the drawings disclose. Even though the plaintiff's drawing does not disclose fasteners in the invention, that is irrelevant because the drawing alone does not identify the invention without further textual information.

1. The defendant also challenges the effectiveness of the disclosure in the plaintiff's patent emphasizing that only one support structure is shown in the drawings. This argument is without merit. The invention disclosed is but one pedestal of a wheel-balancer, which has been adequately disclosed.

The defendant also asserts that its device does not incorporate the invention described in the 511 patent. The defendant focuses on language in claims one and two and incorporated in claim five that:

"... defining a given measuring, supporting means joining said structures and comprising a plurality of supporting rod members forming a parallelogram linkage yieldable in said measuring direction and stiff in planes transverse to said direction to limit vibration of said holding structure to said measuring direction ..." Plaintiff's Exhibit No. 1, Tab A.

The defendant produced the results of two separate series of tests and supported them with a demonstration to prove that the defendant's device allows and measures motion in two directions. One direction is described in the plaintiff's claim as the measuring direction, while the other is perpendicular to the measuring direction and along the axis of rotation. Although this evidence persuades the Court that the defendant's device when incorporated into its wheel balancing machine does move to some extent in more than one plane, the evidence also supports a conclusion that the defendant's device is substantially identical to the plaintiff's invention as claimed in the 511 patent.

To begin with, this Court does not read the claims of the 511 patent to describe a pedestal which allows motion in only one direction. Instead, the claims describe a limited pedestal motion in the measuring direction and a significantly more limited pedestal motion in the axial direction. This Court interprets the claims in the manner of one skilled in the art. *See Autogiro Co. of America v. United States,* 384 F.2d 391 (Ct.Cl.1967) and cases cited in *Autogiro.* In fact, as Professor Muster testified, those skilled in the art realize that completely eliminating motion in the axial direction is not realistic.

The plaintiff has introduced a patent application prepared by Donald Curchod, the designer of the defendant's wheel balancer, which describes the pedestals used in the Nortron balancer. Portions of the description are as follows:

"It is yet another object of the present invention to provide flexure members serving to support the bearing housing carrying the drive shaft of the machine in which *flexure members* are *disposed* in *parallel relation to flex in parallel planes displaced from the side of the wheel* and according to the present object means are provided to *inhibit flexing* of the columns *in a direction transversely of the planes in which they are arranged"*. *Plaintiff's Exhibit,* Tab T. at 3–4 (emphasis added).

\* \* \* \* \* \*

"Means interposed between the bearing housing and the base serves to support the assembly and *to confine* movement of the housing to a predetermined plane *substantially parallel* to the base." *Plaintiff's Exhibit* 1, Tab T. at 2. (emphasis added).

The Court finds the inventor's statements describing the Nortron machine persuasive evidence of the similarity of the plaintiff's and the defendant's mechanisms.[2] Judgment for the plaintiff will be entered in an ORDER filed this day.

---

2. The defendants' test results are not entirely inconsistent with these descriptions. The test involving disabled transducers indicates only that the plaintiff incorporated no unnecessary sensors in its machine. The defendant's explanation of the operation of the plaintiff's bridge circuit and of the use of a different approach in the 511 patent to the problem which the bridge circuit solves is credible. The other test, involving measurements of pedestal motion in the axial direction indicates that one of the pedestals has four times the motion in the measuring direction than in the axial direction. This is consistent with the plaintiff's claim. The other pedestal has a more dramatic motion. The Court can only conclude from the substantial identity of the descriptions of the plaintiff's and defendant's devices that this measurement does not accurately describe the pedestal's motion.