The **TAPPAN COMPANY**, Plaintiff-Appellant,

v.

**GENERAL MOTORS CORPORATION,**
Frigidaire Sales Corporation,

and

Halle Bros. Co., Inc., Defendants-Appellees.

No. 17088.

United States Court of Appeals
Sixth Circuit.

July 21, 1967.

Edward A. Haight, Chicago, Ill. (Edwin E. Donnelly, Jr., Oberlin, Maky & Donnelly, Cleveland, Ohio, John W. Hofeldt, Haight, Simmons & Hofeldt, Chicago, Ill., on the brief), for appellant.

George N. Hibben, Chicago, Ill. (Hibben, Noyes & Bicknell, Chicago, Ill., Warren E. Finken, Detroit, Mich., Albert R. Teare, Teare, Teare & Sammon, Cleveland, Ohio, on the brief, for appellees.

Before WEICK, Chief Judge, and O'SULLIVAN and McCREE, Circuit Judges.

WEICK, Chief Judge.

The Tappan Company, holder of two design patents covering electric cooking ranges, sought injunctive relief and damages against General Motors Corporation and its wholly owned subsidiary, Frigidaire Sales Corporation, producers and marketers of a line of competing ranges, claiming both patent infringement and unfair competition[1]. Before trial the District Court granted General Motors' motion for summary judgment as to the claim of unfair competition. After trial the District Court, in a memorandum opinion, determined that the accused ranges did not infringe Tappan's patents and dismissed the complaint without passing on the issue of validity of the patents. From these orders Tappan now appeals.

The design patents involved here, No. 174,240 (issued in 1955) and No. 180,069 (issued in 1957), cover the design for two similar electric cooking ranges generally referred to as free-standing high oven models, meaning that the oven units are arranged above the surface burners unlike the conventional range. They are meant to be installed on a separate cabinet base or on existing kitchen countertops so that the surface burners operate at a convenient level about waist-high, and the ovens are positioned approximately at eye level. These items were developed by Tappan in response to the rising popularity of built-in cooking units with similar configurations during the late 1950's. The advantage of the new free-standing ranges was that they could easily be installed in existing kitchens without the need for structural changes, thus obtaining the functional and stylistic attraction of the built-in ranges.

While other differences will be developed below, it is important to note that only the design embodied in the '069 patent was ever marketed as a consumer item by Tappan. This model became the Tappan "Fabulous 400" range and it enjoyed marked commercial success upon its introduction to the public in 1958. The two most important characteristics distinguishing the '069 from the '240, as revealed by a comparison of the patent applications, are (1) the use of glass doors on the ovens and (2) the presence of two separate oven compartments of unequal size, placed side by side above the surface level unit. The '240 patent, never commercially developed by Tappan, shows only a single oven with a door made of a metal grille rather than glass.

Prior to its development of the Fabulous 400 range based on the '069 patent, Tappan had been a relatively minor competitor in the electric range market, having devoted most of its long history to

[1]. Halle Bros. Co., Inc., a large department store in Cleveland, was originally joined as a defendant and charged with selling the alleged infringing ranges which were manufactured and marketed by the other two defendants. However, after presentation of Tappan's prima facie case, Halle Bros. Co. was dismissed.

890

the manufacture of gas ranges. The introduction of the Fabulous 400, however, was an immediate success and Tappan electric range sales increased four times in the first year of sales. This initial prosperity, however, was cut short by the introduction of the accused ranges of General Motors, the "Flair" 30- and 40-inch units, in 1960. (While no evidence seems to have been introduced on the subject, it seems reasonable to believe that Tappan's success may also have been affected by the later introduction of similar ranges by manufacturers other than General Motors.)

General Motors' evidence showed that its interest in free-standing, high-oven ranges predated both the dates of the Tappan patents and the commercial introduction of the Fabulous 400. The appearance of the Fabulous 400 and its immediate acceptance by the public, did much, however, to hasten the final development of the defendants' Flair line. Indeed, in the course of its research, the Styling Staff of General Motors acquired and studied some of the Tappan ranges, as well as ranges of at least one other competitor. The Flair ranges were introduced to the public in 1960 and gained much popularity, apparently at the expense of the Tappan products which had preceded them.

 It is important to note that while many sketches, diagrams, and photographs of the ranges involved were introduced in the District Court, it is the patents themselves which must set the bounds of Tappan's rights here. Since disclosure of the new design is one of the elements of our patent system, it is only that which is described and disclosed in the patent application which is subject to protection under the laws. Design patents issued under the authority of 35 U.S.C. §§ 171–173 (1954 ed.) protect only "new, original and ornamental design" disclosed therein and do not extend to modifications or improvements which may appear in the finished product finally manufactured.

In the present case, the District Court ruled after trial that the patents had not been infringed and therefore the Court did not reach the question of their validity as presumed under 35 U.S.C. § 282 (1965 ed.), despite the fact that such validity was squarely in dispute as a result of the pleadings in which the defendants asserted at least five separate reasons for holding the patents invalid.

 While it should never be a strict rule that validity be tested in every case, see Felburn v. New York Central R. R. Co., 350 F.2d 416 (6th Cir. 1965) cert. denied 383 U.S. 935, 86 S.Ct. 1063, 15 L.Ed.2d 852 (1966); Anthony Co. v. Perfection Steel Body Co., 315 F.2d 138 (6th Cir. 1963), the protection of the public interest upon which the patent system is founded dictates that the better procedure in an infringement action is to inquire fully into the validity of the patents as a preliminary step to a consideration of the infringement issues. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945). This procedure should have been followed in the present case, especially in view of substantial doubts on validity raised by the existence of prior art predating plaintiff's patents by as much as forty years. However, it does not appear that Tappan has been prejudiced by the District Court's present disposition of the case based on its careful evaluation of the infringement evidence.

 In view of the large amount of prior art and sparse information contained in the patents themselves, the District Court correctly rejected plaintiff's broad assertions as to the scope of its rights. Assuming for purposes of this appeal that the patents retain their statutory presumption of validity, they must be interpreted narrowly as pertaining only to those aesthetic elements which the design patents reveal, and not to the broad, functional aspects over which plaintiff claims rights.[2]

2. The difficulty in evaluating the scope and content of design patents generally

has evoked authoritative suggestions for their abolition: "The Commission be-

Both parties agree that the test of infringement is that first established by the Supreme Court in Gorham Mfg. Co. v. White, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871) and followed by this Court in Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 67 F.2d 428 (6th Cir. 1933):

"If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." Gorham Co. v. White, supra, 14 Wall. at 528, 20 L.Ed. 731.

 The essence of infringement is the likelihood of consumer deception and it must be determined from an evaluation of the overall appearance of the two ranges, and not from a partial comparison of individual elements. The issue of infringement was a question of fact and the District Court's determination of it is not to be overturned in the absence of clear error. United States Plywood Corp. v. General Plywood Corp., 370 F.2d 500 (6th Cir. 1966); Maytag Co. v. Murray Corp., 318 F.2d 79 (6th Cir. 1963).

Appellant's chief complaint about the District Judge's findings seems to be that he did his job too well. That is, in his careful and complete scrutiny of the two ranges, the District Judge noted a large number of individual differences between the Flair 40-inch model and the Fabulous 400 (the '069 patent), and between the single oven Flair 30-inch model and the undeveloped '240 patent. The most important of these differences were the differing profiles of the ranges, the distinctive glass oven doors on the Flair models, the different arrangements of the control knobs above the ovens on each range, and the separate devices for covering the surface burners when not in use. Mindful of the legal test of overall appearance to the average observer, the District Court concluded that while any one of these differences alone might not be enough to differentiate the Flair from the Fabulous 400, their total effect resulted in an appearance different from the disclosures of the '069 patent.

 Despite this clear statement by the District Court, appellant urges that the District Court did not view the ranges' overall appearances, but rather was overly impressed by so-called "minor details of construction" and thus failed to meet the standards of Gorham Mfg. Co. v. White, supra. We disagree. The careful study made by the Court below was in fulfillment of its duty to make subsidiary findings to support its ultimate conclusions and it might have been deficient if it had not so specified the underlying reasons for its appraisal of the two designs. Kelley v. Everglades Drainage District, 319 U.S. 415, 420, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943); Deal v. Cincinnati Board of Education, 369 F.2d 55, 63–64 (6th Cir. 1966).

It should be noted that the District Court made a separate finding as to the comparison of the Flair single oven 30-inch model and the '240 patent, and concluded in terms to which appellant's first objection could not apply since it was stated in terms of the total visual impression of the two designs[3].

In our opinion, the findings of fact of the District Judge on the issue of infringement are supported by substantial evidence and are not clearly erroneous. Rule 52 Fed.R.Civ.P.

### Unfair Competition

Tappan's second cause of action, joined with the first by virtue of 28 U.S.C. §

---

lieves strongly that all inventions should meet the statutory provisions for novelty, utility and unobviousness and that [design patents] cannot readily be examined for adherence to these criteria." Report of the President's Commission on the Patent System (1966), p. 12.

3. "The Court has the general impression from the '240 patent of a rather gross structure of heavy line with a perforated metal door. On the other hand, the Flair 30-inch range presents a far more pleasing appearance of delicate line and clean modern design."

1338(b), alleged unfair competition by General Motors under the familiar doctrine of distinctive, nonfunctional features. Presumably Tappan sought to apply the law of the forum state, Ohio, although no particular state's law was cited. As noted above, the District Court granted General Motors' motion for summary judgment on this second cause of action before trial commenced. In so doing it relied on the holding of the Supreme Court in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), its companion case Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), and on the rules concerning product identification established in this Circuit in West Point Mfg. Co. v. Detroit Stamping Co., 222 F.2d 581 (6th Cir. 1955) and Estate Stove Co. v. Gray & Dudley Co., 41 F.2d 462 (6th Cir. 1930). It will be necessary to discuss only the first of these supporting grounds.

In the Sears, Roebuck and Compco cases the Supreme Court held that the patent provisions (Art. I, § 8, cl. 8) and the Supremacy Clause of the Constitution precluded the individual states from granting protection to articles unprotected by the federal patent laws. Those two cases involved design patents which had been held invalid by lower courts, which nevertheless granted relief on the basis of state unfair competition law. The Supreme Court reversed those determinations, reasoning that the force of the Supremacy Clause, as well as the need for uniform standards of protection, required that the federal decision on these matters remain the sole measure of the rights of the competitors.

In the present case the District Court based its judgment on the theory that Sears, Roebuck and Compco extended even to cases where the patent had not yet been invalidated and still retained its statutory presumption of validity. While we think it would have been better practice for the District Court to have deferred ruling on this count until after deciding the issues of validity and infringement of the patents, we find no prejudice has resulted to appellant from the Court's premature disposition of this matter.

The question, as stated in the first sentence of the Sears, Roebuck case is whether state law may grant relief to the owner of a design or article which is not *protected* by a federal patent or copyright. For our purposes it is important to point out that a design or article may be deprived of such protection for one of two reasons * * * either it may not qualify for a patent or copyright at all (initially at the Patent Office, or upon later judicial determination) or, as happened here, it may be found that the specific infringement against which relief is sought, does not in fact impinge upon the plaintiff's rights. Thus, in our case, the District Court found that the Fabulous 400 was not entitled to patent protection against the marketing of the Flair line produced by defendants. In this sense, the federal decision that no protection is warranted is the same whether it is based on a finding of patent invalidity, as in Sears, Roebuck, or on a finding of non-infringement as in our case.

To allow relief under state law in either situation would run counter to the paramount federal decision of non-protection. See Columbia Broadcasting System, Inc. v. DeCosta, 377 F.2d 315 (1st Cir. 1967).[4]

Finally, in its brief, Tappan attempts to bring its case within the "exception" to the Sears, Roebuck rule, see 376 U.S. 225, 232, 239, 84 S.Ct. 784, by claiming that it seeks relief from intentional product confusion by General Motors. However, the affidavit submitted by Howard H. Bogue in support of the motion for summary judgment shows indisputably that the accused Flair

---

4. There was no claim that General Motors violated state statutory or decisional law relating to labeling. The state may reg-

ulate in this field. Compco v. Day-Brite Lighting, Inc., supra, 376 U.S. p. 238, 84 S.Ct. 779.

ranges are conspicuously marked with General Motors, Frigidaire, and Flair names and trademarks before being offered to the public. Tappan never attempted to contradict this affidavit and no piece of evidence in the record would support even an inference that the ranges are not so marked when purchased by the consuming public at retail. Therefore, no buyer could be confused as to the source of the merchandise and no intent to deceive can be imputed to General Motors.

Affirmed.