**BLACK & DECKER INC. and Black & Decker (U.S.) Inc., Plaintiffs,**

v.

**PITTWAY CORPORATION, Defendant.**

No. 85 C 1517.

United States District Court, N.D. Illinois, E.D.

May 16, 1986.

William A. VanSanten, Wood, Dalton, Phillips, Mason & Rowe, Chicago, Ill., for plaintiffs.

James M. Amend, Andrew C. Holcomb, Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Black & Decker Inc. and Black & Decker (U.S.) Inc. (collectively "B & D," treated as a singular noun after this sentence) have sued Pittway Corporation ("Pittway") for patent infringement. Pittway now moves under Fed.R.Civ.P. ("Rule") 56 for summary judgment.[1] For the reasons stated in this memorandum opinion and order, Pittway's motion is granted.

### Facts [2]

In early 1980 B & D decided to design a rechargeable flashlight (D.Ex. 2), assigning that project to B & D employee Donald McCloskey ("McCloskey") (McCloskey Dep. 35). B & D wanted the flashlight design to resemble its Dustbuster cordless vacuum cleaner system (D.Ex. 2), and McCloskey in fact used Dustbuster as a "reference" in developing a flashlight design (McCloskey Dep. 158–59).

On June 15, 1980 McCloskey prepared a drawing that substantially embodied the ultimately patented flashlight design (D.Ex. 5). On July 10, 1981 B & D applied for its design patent. On January 31, 1984 U.S. Design Patent 272,476 ("Design Patent 476") issued to B & D, covering "[t]he ornamental design for a flashlight or similar article, as shown and described" (D.Ex. 1). B & D's "Spotliter" rechargeable flashlight embodies that design (Bitzel Dep. 23). B & D claims Pittway's "Ready-Lite" rechargeable flashlight infringes Design Patent 476.

### Pittway's Contentions

Pittway advances three contentions in support of its summary judgment motion:

1. Design Patent 476 is invalid under 35 U.S.C. § 102 ("Section 102") because the prior art anticipated B & D's flashlight design.

2. Design Patent 476 is invalid under 35 U.S.C. § 103 ("Section 103") because the prior art rendered the flashlight design obvious.

---

1. This action was originally assigned to this Court's colleague, Honorable George Leighton. When Judge Leighton recently took senior status, the case was reassigned to this Court's calendar—complete with the fully-briefed Pittway motion.

2. Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (a proposition most recently repeated in *McGraw Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1167 (7th Cir.1986)). For that purpose this Court must view the evidence in the light most favorable to the nonmovant—in this case B & D. *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1986).

3. Pittway's Ready-Lite flashlight does not infringe B & D's Design Patent 476.

In accordance with the "better practice" identified by the Court of Appeals for the Federal Circuit in *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1582–83 (Fed.Cir.1983), this opinion will address each of those arguments, though either would be dispositive here.

### Anticipation

Anticipation doctrine has essentially been codified in Section 102. *Continental Oil Co. v. Cole*, 634 F.2d 188, 195 (5th Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 124, 70 L.Ed.2d 106 (1981) (footnote omitted) states the general rule:

> [U]nless all of the same elements or their equivalents are found in substantially the same situation where they do substantially the same work in the same way, there is no anticipation.

Accord, such cases (among many) as *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.*, 436 F.2d 1180, 1182–83 (7th Cir.), *cert. dismissed*, 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971). By definition anticipation exists only where a *single prior art reference* contains each element of a patent claim. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984).

Pittway Mem. 5 relies on an internal B & D patent memorandum (D.Ex. 6) to identify six distinct features of Design Patent 476 (for convenience in comparison, the following numbering will be retained throughout this opinion in referring to these features):

1. a square head;
2. an asymmetric placement of the handle;
3. a sloping interconnection between the handle and the head;
4. an angularity of profile;
5. a handle with flattened sides; and
6. a reflector axis parallel to the axis of the handle.

Pittway has pointed out two relevant prior art references:

1. a flash attachment called the Mecablitz Model No. 107 ("Metz 107") (D.Exs. 9 and 10); and
2. B & D's own Dustbuster design (D.Ex. 3).

Pittway says each of those devices contains every claimed element of Design Patent 476.[3]

*Clark Equipment Co. v. Keller*, 570 F.2d 778, 799 (8th Cir.) (citations omitted), *cert. denied*, 439 U.S. 825, 99 S.Ct. 96, 58 L.Ed.2d 118 (1978) states the "ordinary observer" test for determining Section 102 anticipation:

> The novelty of a design patent .... is tested by determining the impact of the design upon an ordinary observer. A design patent is novel when the "average observer takes the new design for a different, and not a modified already existing design." ... This is the prevailing and now well-settled test for the novelty of a design patent.

See also such cases as *Schnadig Corp. v. Gaines Manufacturing Co.*, 494 F.2d 383, 388–89 (6th Cir.1974).[4] That standard is

---

**3.** Pittway initially claimed U.S. Design Patent 205,679 ("Design Patent 679") (D.Ex. 7) also anticipated Design Patent 476. But Pittway Mem. 20 admits Design Patent 679 lacks three features of Design Patent 476:

 1. a square head;
 5. a handle with flattened sides; and
 6. a reflector axis parallel to the axis of the handle.

In an effort to close that gap, Pittway Mem. 19 urged another prior art reference (U.S. Design Patent 204,904 ("Design Patent 904") (D.Ex. 8) contained those three features. Pittway then said the "combination" formed by adding Design Patent 679's features to Design Patent 904's

elements collectively anticipated B & D's Design Patent 476. But as noted in the text of this opinion, anticipation (as contrasted with obviousness) exists only where a single prior art reference contains each element of a patent claim. *Kalman*, 713 F.2d at 771. Pittway R.Mem. 4–5 effectively concedes that point and narrows Pittway's claimed prior art references to Metz 107 and Dustbuster.

**4.** More than a century ago *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1872) originated the "ordinary observer" standard as the test for infringement. Courts also use that concept as the criterion for "novelty" in deter-

readily applicable to evaluate the similarity of Design Patent 476 to the prior art references identified by Pittway.

### 1. *Metz 107*

Metz 107 was manufactured as a flash attachment by the Metz Company of Fuerth, West Germany. It was sold in the United States at least as early as 1961 (Callahan Aff. ¶¶ 3–5). Side-by-side drawings of the designs embodied in Design Patent 476 (D.Ex. 1) and Metz 107 (D.Ex. 9) facilitate their comparison (attached as Appendix 1 to this opinion).

That visual comparison reveals Metz 107 clearly has five of B & D's self-identified six features of Design Patent 476:

    1. a large square head;

    2. an asymmetric placement of the handle;

    3. a sloping interconnection between the handle and the head;

    4. an angularity of profile; and

    5. a handle with flattened sides.

Only two arguable differences between Metz 107 and Design Patent 476 require separate consideration:

    1. Metz 107 is a camera flash attachment and not a flashlight.

    2. Unlike the Spotliter, Metz 107's reflector axis is not parallel to the axis of the handle (B & D's claimed sixth feature).

Neither defeats Pittway's anticipation claim.

First, a mere difference in Metz 107's function does not negate Pittway's claim that the Metz 107 design anticipates Design Patent 476. As *In re Glavas*, 230 F.2d 447, 450 (C.C.P.A.1956) (citations omitted) put it:

[T]he Board of Appeals in its decision in the instant case held that all arts are analogous so far as designs are concerned, citing *Ex parte Knothe*, 102 O.G. 1294 and *In re Jabour*, 182 F.2d 213, 37

C.C.P.A., Patents, 1084 [Fed.Cir.1950]. While the cited cases do not contain the language employed by the board, they do appear to sanction, under certain circumstances, the rejection of a design application on a combination of references from arts which would be considered nonanalogous from a mechanical standpoint. Thus in the *Jabour* case, it was held to be proper to combine features from a tank and a microphone.

It is true that the use to which an article is to be put has no bearing on its patentability as a design and that if the prior art discloses any article of substantially the same appearance as that of an applicant, it is immaterial what the use of such article is.... Accordingly, so far as anticipation by a single prior art disclosure is concerned, there can be no question as to nonanalogous art in design cases.

See also *Revlon, Inc. v. Carson Products Co.*, 602 F.Supp. 1071, 1083 (S.D.N.Y.1985) ("Unlike the doctrine of obviousness ..., anticipation does not require that the prior references be analogous or even relevant arts to the invention"); *H.K. Porter Co. v. Black & Decker Manufacturing Co.*, 182 U.S.P.Q. 401, 415 (N.D.Ill.1974) (Tone, Circuit Judge, sitting by designation). Even were that not the rule, Metz 107 and the Spotliter perform a similar function (providing artificial light) in any event. Without question the Metz 107 design constitutes relevant prior art to Design Patent 476.

As for the only other difference between Metz 107 and Spotliter (that of reflector axis orientation), Pittway says that represents a purely functional consideration and hence cannot support the validity of Design Patent 476. *Kwik-Site Corp. v. Clear View Manufacturing Co.*, 758 F.2d 167, 171 (6th Cir.1985) states the general principle on which Pittway relies:

mining patentability under 35 U.S.C. § 171. *See Contico International, Inc. v. Rubbermaid Commercial Products, Inc.*, 665 F.2d 820, 823 (8th Cir.1981). But "novelty" is simply the flip side of the "anticipation" coin. Hence courts also

use the "ordinary observer" test to determine anticipation under Section 102. See *In re Nalbandian*, 661 F.2d 1214, 1217 & n. 3 and cases cited (C.C.P.A.1981).

A design patent may be issued for "any new, original and *ornamental* design for an article of manufacture." 35 U.S.C. § 171 (emphasis added). In order to be valid, a design patent "must disclose a design that is new, original and ornamental, unanticipated and inventive in character, and beyond the skill of the ordinary designer or draftsman.... A *design patent cannot be obtained to protect a mechanical function or cover an article whose configuration affects its utility alone.*" *Spaulding v. Guardian Light Co.*, 267 F.2d 111, 112 (7th Cir. 1959) (citations omitted) (emphasis added).

Here Pittway argues the difference in reflector axis orientation stems not from aesthetic considerations but solely from the different functions of a camera flash attachment and a hand-held flashlight. In support of that position Pittway points to McCloskey Dep. 92:

Q. I'm not really focusing on the particular angle of the handle. What I'm saying is that you'd want the beam directed from the front of the unit as opposed to some of the other designs, earlier designs we saw, referring to exhibit 2, as opposed to coming out of what would be the bottom of the head or the top of the head, is that correct?

A. Yes, that's correct.

Q. That was a functional consideration that dictated that, am I correct?

A. Yes, you are.

Because the direction of the light serves a purpose dictated only by the function of the product, that feature cannot serve to distinguish Design Patent 476 from Metz 107.

In summary, Metz 107 fully anticipates Design Patent 476. Though that alone would be dispositive here, it is worth examining Pittway's other prior art reference.

### 2. B & D's Dustbuster

Pittway also says B & D's own Dustbuster (D.Ex. 3) anticipates each element of Design Patent 476 (depictions of both are attached as Appendix 2 to this opinion). But a visual comparison reveals Design Patent 476 and Dustbuster share only two of B & D's stated six features of Design Patent 476:

2. an asymmetric placement of the handle; and

4. an angularity of profile.

Dustbuster clearly lacks:

1. a large square head;

3. a sloping interconnection between the handle and the head;

5. a handle with flattened sides; and

6. a reflector axis parallel to the handle.

In short, Dustbuster's design simply does not sufficiently resemble Design Patent 476 to anticipate it.

\*      \*      \*      \*      \*      \*

Though Pittway thus misses the mark as to Dustbuster, it is correct in contending Metz 107 fully anticipates Design Patent 476. B & D Mem. 3 seeks to respond by asserting:

Here there is no one prior art device or reference which discloses the total design of the patent-in-suit.

But that conclusory statement fails to "set forth specific facts" as mandated by Rule 56(e). B & D has submitted no evidence to support that assertion,[5] and it cannot avoid

---

5. B & D has tendered an affidavit by Stuart Naft, stating in wholly conclusory fashion:

6. The Metz 107 device is a photographic strobe light, adapted for attachment to a camera, which directs illumination perpendicular to its own longitudinal axis; for these reasons, I would not have considered the design of this device in the course of my efforts, if called upon to design a flashlight.

\*      \*      \*      \*      \*      \*

9. The drawing of S.J. Exhibit 9 do not fairly represent the product shown in the photos of S. J. Exhibit 18 in that it minimizes many of the design differences to be noted in a comparison of the McCloskey et al design with the photographs of the Metz 107 device. But Naft's affidavit does not raise a genuine issue of material fact:

1. Naft Aff. ¶ 6 simply puts forth Naft's own conclusion. In the absence of a factual dispute, however, this Court can decide the

Pittway's summary judgment motion on that basis. Its patent is invalid on anticipation grounds.

### Obviousness

Pittway also seeks summary judgment on the ground Design Patent 476 is invalid as "obvious" under Section 103:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

That reference to "a person having ordinary skill in the art," in the field of design patents, has been taken to mean "the designer of ordinary capability who designs articles of the type presented in the application." *In re Nalbandian*, 661 F.2d at 1216.

Of course the holding Design Patent 476 was fully anticipated by Metz 107 carries with it a fortiori a holding of obviousness under Section 103. *In re Fracalossi*, 681 F.2d 792, 794 (C.C.P.A.1982) (citations omitted) put that "obvious" conclusion in these terms:

> Though the composition might have been obvious, though not anticipated, it cannot have been anticipated and not have been obvious. Thus evidence establishing lack of all novelty in the claimed invention necessarily evidences obviousness. As we noted in *In re Pearson*, 494 F.2d 1399, 1402, 181 U.S.P.Q. 641, 644 (C.C.P.A.1974):
>
> > [T]his court has sanctioned the practice of nominally basing rejections on § 103 when, in fact, the actual ground of rejection is that the claims are anticipated by the prior art.... The justification for this sanction is that a lack of novelty in the claimed subject matter,

issue of anticipation as a matter of law. See *Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1333 (7th Cir.1984).

e.g., as evidenced by a complete disclosure of the invention in the prior art, is the "ultimate or epitome of obviousness."

Even were Metz 107 not fully anticipatory (and hence the "epitome of obviousness"), Pittway's submissions support an independent finding of obviousness. That defense (unlike anticipation) does not require every element of the claimed patent to appear in a single reference. *In re Rosen*, 673 F.2d 388, 390-91 (C.C.P.A.1982). Here Pittway has identified several references besides Metz 107 that, in combination, reveal each distinct feature of Design Patent 476:

1. U.S. Design Patents 226,022 (D.Ex. 12) and 226,219 (D.Ex. 16) reveal a square head.

2. U.S. Design Patent 230,068 (D.Ex. 13) includes an asymmetric placement of the handle.

3. U.S. Design Patents 226,022 (D.Ex. 12) and 208,940 (D.Ex. 14) show a sloping interconnection between the handle and the head.

4. U.S. Design Patents 226,022 (D.Ex. 12), 209,163 (D.Ex. 15) and 226,219 (D.Ex. 16) all demonstrate an angularity of profile.

5. U.S. Design Patent 226,022 (D.Ex. 12) contains a handle with flattened sides.

6. Each of the prior references cited by Pittway includes a reflector axis parallel to the axis of the handle.

Thus the relevant prior art would clearly suggest Design Patent 476.

That approach of course poses some peril. Especially in the field of design patents, an undue splintering of the whole into too many small parts could well result in the nonpatentability of almost any design as "obvious." But more to the point, such a two-patent combination as has been rejected in n. 3 for anticipation purposes states a

2. Naft Aff. ¶ 9 similarly expresses Naft's own conclusions, without any specific factual backdrop.
Naft's affidavit just does not do the job.

powerful case for the obviousness and hence invalidity of Design Patent 476.

B & D tries to resist the obviousness result by pointing to the commercial success of its Spotliter as raising a factual issue on that score. That argument stems from the seminal expression in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966):

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

To support its commercial-success claim, B & D relies on Aff. ¶¶ 3–4 of its Product Manager of Lighting Products, Carol Dores:

> 3. I have examined business records of Black & Decker (U.S.) Inc. pertaining to sales of SPOTLITER rechargeable lights which incorporate the design of the McCloskey et al. patent (U.S.) (Pat. Des. 272,476).
>
> 4. The said records indicate that, since product introduction, sales have been in excess of three million units, producing revenues in excess of sixty million dollars ($60,000,000.00).

But whatever that statement says about commercial success, it wholly fails to establish a link between that success and the distinct features of Design Patent 476. That omission is fatal, for *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985) teaches:

> A nexus between the merits of the claimed invention and the evidence of

secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision.

Dores' affidavit thus creates no material fact issue as to nonobviousness based on commercial success. See *Cable Electric Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1026–27 (Fed.Cir.1985).

Finally B & D argues Naft Aff. ¶¶ 4, 8 and 10 create a factual dispute as to obviousness:

> 4. I have reviewed the designs disclosed in the following U.S. Patents:
> Des. 205,679 (Moore et al)
> Des. 204,904 (Moore et al)
> Des. 226,022 (Holtzman)
> Des. 230,068 (Numbers)
> Des. 208,940 (Moore)
> Des. 209,163 (Connor)
> Des. 226,219 (Brindley)
>
> 8. None of the designs disclosed in the patents listed in Para. 4 hereof either alone or in combination, is visually similar to the design of the McCloskey et al patent.
>
> 10. As a designer, the design of the McCloskey et al patent would not have been obvious in view of the prior art patents and devices identified hereinabove.

But those statements do not raise a genuine issue of material fact:

1. Naft Aff. ¶ 8 presents no facts supporting Naft's conclusory assertion.

2. Naft Aff. ¶ 10 once again simply states Naft's own conclusion on the ultimate legal issue and raises no factual dispute. *Peterson Manufacturing Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1548 (Fed.Cir.1984).

■ In summary, B & D has failed to "set forth specific facts" controverting Pittway's submissions. Pittway has also established the obviousness of Design Patent 476 as a matter of law.

## Infringement

*Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984) summa-

rizes the legal standard of infringement in design patent cases:

> More than one hundred years ago, the Supreme Court established a test for determining infringement of a design patent which, to this day, remains valid. *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871). This test requires that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.* at 528, 20 L.Ed. 731.

> For a design patent to be infringed, however, no matter how similar two items look, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Sears, Roebuck & Co. v. Talge*, 140 F.2d 395, 396 (8th Cir.1944); *Horwitt v. Longines Wittnauer Watch Co.*, 388 F.Supp. 1257, 1263, 185 USPQ 123, 128 (S.D.N.Y.1975). That is, even though the court compares two items through the eyes of the ordinary observer, it must nevertheless, to find infringement, attribute their similarity to the novelty which distinguishes the patented device from the prior art.

Pittway argues its Ready-Lite does not transgress that standard and therefore does not infringe Design Patent 476.

### 1. Gorham's "Eye" Test

Pittway Mem. 29–30 first urges McCloskey Dep. 220–30 concedes twelve differences exist between Ready-Lite and Spotliter:

(1) the "canted" or downward sloping joining of the head-to-handle in the RL30, which is not present in the Spotliter, the latter having a handle parallel to the reflector axis (McCloskey Dep. 220–21 and 229);

(2) the head of the Spotliter is much larger in proportion to its handle than is the RL30, the head of the RL30 being substantially smaller than the Spotliter's (*id.* 223);

(3) a thicker, rounder handle on the RL30 (*id.* 220 and 227);

(4) the different angle of the head (10 to 15° of difference) when both the RL30 and the Spotliter are either resting on a horizontal surface or hand-held (*id.* 221–22);

(5) the shoulder of the Spotliter angles back toward the handle, whereas the shoulder on the RL30 angles toward the front (*id.* 222);

(6) the "on-off" switches are substantially different in size and shape, with the RL30's being about twice as long (*id.* 224);

(7) the housings of the two units are different—the RL30 using a single molded part, whereas the Spotliter is a two-piece construction with visible screw openings and a visible mating line (*id.* 225);

(8) the top of the RL30 handle is flat whereas the Spotliter's is rounded (*id.* 226–27);

(9) the back of the RL30 handle is more slanted and does not have the retaining lip of the Spotliter (*id.* 227);

(10) the RL30 does not have the Spotliter's adjustable wire bale, for angling the beam of light, or a finger recess in the housing to enable the bale to be gripped (*id.* 228);

(11) the LED indicators are on opposite sides of the two units (*id.* 229); and

(12) the RL30 bezel (front-most portion of the head) is square and of a uniform wall thickness, whereas the bezel of the Spotliter is sculptured and tapers toward the round lens opening (*id.* 228–29).

D.Ex. 11 (attached as Appendix 3 to this opinion), a side-by-side photograph of Ready-Lite and Spotliter, facilitates an evaluation of those claimed differences, which have been confirmed by this Court's own physical inspection of Ready-Lite and Spotliter (in a literal application of the *Gorham* "eye of an ordinary observer" standard).

■ Perhaps no individual distinction would by itself justify a conclusion of non-infringement. However, the combination of those differences in Ready-Lite's design creates a distinct impression of an overall difference in appearance. In that respect, *Black & Decker, Inc. v. North American Philips Corp.*, 632 F.Supp. 185, 190–191, 228 U.S.P.Q. 659, 661 (D.Conn.1986) (rejecting an infringement claim as to Dustbuster) might well have been written for this case:

> Plaintiffs also argue that comparison of the individual elements of the respective machines is impermissible. While the *Gorham* "eye" test anticipates that the court will make a judgment based on an overall impression of the products in issue and not compare individual components of a product[,] the court cannot avoid a consideration of the constituent elements of the machines, if only to use these elements as a point of reference for making a general comparison. Moreover, when the elemental differences are numerous and substantial, their combined effect causes the product in overall appearance to be distinct and different. The Court notes the differences between the constituent parts of the opposing designs not as determinative by themselves, but as part of the process of evaluating the overall appearances of the product. The Court would "have been deficient if it had not so specified the underlying reasons for its appraisal." *Tappan Co. v. General Motors Corp. and Halle Bros. Co., Inc.*, 380 F.2d 888, 891, 154 USPQ 561, 563 (6th Cir.1967).

B & D insists infringement is a question of fact incapable of resolution on a summary judgment motion. But *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed.Cir. 1985) (citations omitted)—sought to be adduced by B & D in its own support—makes it clear infringement claims are not immune from summary judgment:

As the district court recognized, "[s]ummary judgment is as appropriate in a patent case as in any other" when it is shown that no genuine issue of material fact remains for decision and that the movant is entitled to judgment as a matter of law.... It is at least conceivable that comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process would reflect such an absence of material fact issue as to warrant summary judgment of infringement or noninfringement. Because infringement is itself a fact issue, however, a motion for summary judgment of infringement or noninfringement should be approached with a care proportioned to the likelihood of its being inappropriate.

Here B & D does not dispute the design differences identified by Pittway. Instead B & D says a factual issue as to infringement is created by its evidentiary submissions:

1. a survey (P.Exs. A & B) purporting to demonstrate that Ready-Lite and Spotliter appear confusingly similar to an ordinary observer; and

2. two affidavits from B & D's Customer Service Manager Walter Biedermann purporting to establish actual instances of consumer confusion between Ready-Lite and Spotliter.

Like the rest of B & D's contentions, this one fails.

First, B & D's survey information does not surmount even the low threshold of Fed.R.Evid. 401's relevance definition.[6] B & D's survey "expert"[7] first showed a number of people a printed advertisement displaying a variety of household products, including only one flashlight—B & D's Spotliter. Then the advertisement was removed from view, and the interviewees were asked to recall several of the products advertised. Those who remembered seeing

---

**6.** That Rule reads:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**7.** That term is used loosely, given the survey he designed.

a flashlight were then taken into a room with various household products on display, including only one flashlight—this time Pittway's Ready-Lite. At that point the respondents were asked which products on display they had earlier seen in the advertisement. According to B & D, 88% of those people incorrectly identified Pittway's Ready-Lite as the B & D Spotliter they had actually seen in the advertisement.

Just to describe that procedure shows how nonprobative it is of a confusing resemblance between Ready-Lite and Spotliter. It strongly resembles a card trick in which the magician forces on his subject the card he wants selected. *Black & Decker*, 228 U.S.P.Q. at 664, speaking of an identical survey conducted by B & D in litigation over its Dustbuster, articulated that criticism—only one of the survey's obvious flaws:[8]

> The survey must be relevant "as to whether an ordinary shopper might be confused into buying [one product] when intending to buy [the other]." *Litton, supra*, 728 F.2d at 1447, 221 USPQ at 112. Plaintiffs' survey lacks relevancy, primarily because it lacks adequate control for the possibility of ambiguity and confusion in the questions to the respondents. The questions that were posed do not adequately distinguish between *products* and *brand names*. Since the NORELCO CLEAN UP MACHINE was the only hand held vacuum cleaner among the various household items on display, the only firm conclusion that can be drawn from the study is that the Black & Decker DUSTBUSTER and the NORELCO CLEAN UP MACHINE share several features in common. *See*

*Litton, supra*, 728 F.2d at 1447, 221 USPQ at 112.

In the same way, B & D's survey here suggests only that the respondents identified both Ready-Lite *and* Spotliter as rechargeable flashlights.

As for B & D's second type of evidentiary submission—the Biedermann affidavits[9]—each refers to some customer correspondence received in connection with B & D's rebate policy, but in each instance actually relating to one of Pittway's products (and not B & D's), and then states Biedermann's own conclusions as to the significance of that correspondence. Neither affidavit suffices to create the necessary factual issue to block summary judgment.

In the first place, the affidavits pose problems from a rule-compliance point of view. Rule 56(e) provides:

> Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

B & D has omitted to attach both the Pittway Ready-Lite proof-of-purchase and the rejection letter from the rebate fulfillment house.[10]

But Biedermann's affidavits contain an even more fundamental flaw in Rule 56(e) terms. They are clearly hearsay, depending as they do on out-of-court statements to establish the truth of the matters asserted. Because Rule 56(e) limits a party to "such facts as would be admissible in evidence," this Court need not consider them on the current motion. *Steinle v. Warren*, 765 F.2d 95, 100 (7th Cir.1985).

There is more. Even were confusion between the products properly established (as

---

**8.** As to the construction of such really bogus surveys, see this Court's opinion in *A.J. Canfield Co. v. Vess Beverages, Inc.*, 612 F.Supp. 1081, 1092–94 (N.D.Ill.1985), *aff'd* 796 F.2d 903 (7th Cir.1986).

**9.** B & D moved for leave to file Biedermann's second affidavit after the parties had fully briefed the summary judgment motion. Pittway opposes that filing on the ground the affi-

davit contains no competent evidence. This Court grants leave to file the affidavit but concludes it fails, for the reasons stated in the text, to create a factual issue defeating the summary judgment motion.

**10.** It may be noted the actual letter attached to Biedermann's affidavit nowhere mentions Pittway's Ready-Lite.

it has not been [11]), there is nothing at all to suggest the confusion stemmed from the patent-distinctive (that is, the allegedly "novel" or invented) part of B & D's design. That independently deprives the affidavits of any probative force, and it logically leads to the final phase of this opinion.

### 2. "Point of Novelty" Test [12]

This Court's conclusion that Ready-Lite and Spotliter do not share the same overall design compels a finding of noninfringement under *Gorham* 's "eye" test. But the second paragraph previously quoted from *Litton*, 728 F.2d at 1444 also identifies a second and independent "point of novelty" standard for determining design patent noninfringement. That doctrine, under which the court must "attribute the [ ] similarity [between the two designs] to the novelty which distinguishes the patented device from the prior art," is of course simply an application of the general (and tautological) concept that only *invention* is entitled to patent-law protection. Except for such part of a design as is truly novel (and hence patentable), anyone is absolutely free to copy it, jot and tittle.

■ During discovery Pittway served an interrogatory on B & D designed to pinpoint the novel features of Design Patent 476. When B & D initially refused to answer that interrogatory, Magistrate James Balog ordered it to do so (D.Ex. 19). B & D then identified just two features of Spotliter as novel (D.Mem. 23–24):

1. a square-shaped head with a round lens and reflector blended into a single rearwardly-extending stick handle; and

2. a switch on top of the handle.

But Pittway's Ready-Lite incorporates neither of those features as stated:

1. In contrast to Spotliter's round lens, Ready-Lite incorporates a· square lens (McCloskey Dep. 224):

Q. And the bezel on the Pittway unit is square and has a uniform wall thickness when viewed from the front of the unit, is that correct?

A. Yes, I believe it is.

Q. On the Black & Decker unit as viewed from the front, it is seen as a sculptured bezel tapering from the center edge toward the round center reflector or length [sic: should be "lens"] opening, isn't that correct?

A. If I understand what you're saying correctly, yes, it does have a consistent thickness at the outer edge and then blended to the round.

2. Spotliter's switch in fact appears on top of the flashlight's large square head (D.Ex. 1). Ready-Lite's switch, as B & D asserts, is located on the handle itself. Hence Ready-Lite does not incorporate Spotliter's assertedly novel switch placement.

Thus B & D fails the "point of novelty" test as well.[13]

\* \* \* \* \* \*

In sum on the infringement issue:

---

11. Assume arguendo Biedermann's affidavits were not barred on hearsay grounds (save of course for his own conclusory opinion, which is not admissible on any theory). It is still an extraordinary stretch from the facts the affidavits portray to an inference that confusion existed of a type that evidences design patent infringement.

12. As with the "eye" test, the following discussion will also assume the validity of Design Patent 476 (as B & D's counsel has described its "points of novelty," discussed later in the text).

13. In fairness, B & D was brought to the point of identifying "points of novelty" kicking and screaming. Its basic position has been that everything in Design Patent 476 is novel in its

totality. And it must be recognized *Litton* approached the "point of novelty" inquiry (728 F.2d at 1444) after the court had already narrowed the scope of the design patent in that case in the course of holding it valid (*id.* at 1440–43). This opinion, which addresses noninfringement as an alternative defense (and must for that purpose also assume the patent's validity arguendo, though this Court has ruled otherwise on the merits) cannot indulge the *Litton* luxury of limiting the patent claim. That factor does not appear to have been recognized by the District Court in *Black & Decker*, 228 U.S.P.Q. at 662. There the District Court really confused the "point of novelty" approach by impermissibly merging validity and infringement considerations (it rejected one acknowledged "point of similarity" because it found it "not a novel fea-

1. Pittway's Ready-Lite does not look sufficiently similar to B & D's Spotliter so as to confuse an ordinary observer.

2. Moreover and independently, Pittway's Ready-Lite has not appropriated the asserted novelty of Spotliter.

For each of those separate reasons, Pittway has not infringed Design Patent 476.

*Conclusion*

There is no genuine issue of material fact, and Pittway is entitled to a judgment as a matter of law, on B & D's Complaint. Design Patent 476 is neither valid nor infringed by Pittway's Ready-Lite. This action is dismissed.

ture"—a factor relevant only in determining patent validity—and mistakenly relied on *Litton* for that line of reasoning). In any event, candor here compels the acknowledgement that if B & D could have avoided being pinned down to

identify the specific features it claimed as "novel," the Spotliter might perhaps have survived the "point of novelty" test—but it could not pass the "eye" test in any event. That latter failure would remain just as fatal to B & D.

APPENDIX 1

[Figure 1--'476 patent]          [Metz 107 device]

[Figure 2--'476 patent]          [Metz 107 device]

[Figure 3--'476 patent]          [Metz 107 device]

[Figure 4--'476 patent]          [Metz 107 device]

# APPENDIX 2

DESIGN PATENT 476                    DUSTBUSTER

DESIGN PATENT 476

DUSTBUSTER
(snout removed to
  facilitate comparison)

DESIGN PATENT 476                    DUSTBUSTER

APPENDIX 3

